WATKINS, Judge.
The West Feliciana Parish School Board sued Stone and Webster Engineering Corporation and Gulf States Utilities Company for sales and use.taxes allegedly due by these enterprises but not paid. Later, Cajun Electric Power Cooperative, Inc. intervened on the side of defendants. Still later, an alleged partnership composed of Cajun and Gulf States was made an additional party defendant.
The sales and use taxes allegedly due were never assessed by the School Board; the sales and use tax forms filed with the School Board by Stone and Webster having only included 70% of the total sales of materials, as will be explained by the quotation immediately following.
The present case is factually similar to Cajun Electric Power Cooperative, Inc. v. McNamara, 452 So.2d 212 (La.App. 1st Cir.1984), writ denied, 458 So.2d 123 (La.1984), in which Cajun and Stone and Webster paid state sales and use taxes under protest, and thereupon sued the State Secretary of Revenue and Taxation for a refund. We quote the three paragraphs immediately following the first paragraph of that decision for a brief statement of the facts:
In April of 1971, Gulf States Utilities Company (GSU) and S & W (Stone & Webster) entered into a contract for the construction of the River Bend Nuclear Power Plant.
Eight years later (August, 1979), during the course of the construction, GSU and Cajun agreed that Cajun would become a 30% co-owner of River Bend. Pursuant to this agreement, GSU and Cajun executed a contract captioned “Joint Ownership Participation and Operating Agreement.” GSU and Cajun agreed that Cajun would acquire its 30% undivided co-ownership interest in River Bend in the following manner. All construction costs up to the point of Cajun’s entry into the project had been paid for by GSU. It was agreed that beginning in January, 1981, Cajun would begin paying for all costs of construction and would continue to do so until such time as Cajun had bought and paid for costs of construction which equaled 30% of the total which had been spent on such costs up to that point in time.
From January, 1981, through November, 1981, Cajun paid for all construction costs. During this period, GSU did not contribute any funds. After November, 1981, Cajun had contributed funds which equaled 30% of the total costs, and the parties were at what they refer to as “parity.” Since November, 1981, GSU and Cajun have been responsible for the costs of construction by paying 70% and 30%, respectively. The project is still *810 under construction, and the 70/30 contribution is still in progress.
Cajun contended at trial that as an electric cooperative it is exempt from sales and use tax by virtue of the provisions of LSA-R.S. 12:425. The trial court found that Stone and Webster purchased the materials used in the construction of the River Bend facility as an independent contractor, and hence was liable for sales and use taxes imposed by the School Board by ordinance.[1] Additionally, the trial court levied interest, penalty, and attorney’s fees.[2]
We agree with the trial court’s judgment that the sales and use taxes are due, but we hold that the joint venture composed of Gulf States and Cajun is responsible for these taxes rather than Stone and Webster. We levy interest and one part of penalty, and deny one part of penalty. We hold the matter of attorney’s fees in abeyance awaiting further proceedings.
SALES TAX
A small portion of the sales was made in West Feliciana Parish. Defendants con *811 tend that all of these sales after Cajun entered into the Joint Ownership Participation and Operating Agreement but before parity was achieved, and thirty (30%) percent of all sales thereafter, are exempt from sales tax under LSA-R.S. 12:425.
A written contract was entered into between Gulf States and Stone and Webster in April of 1971, as the quotation from our prior decision shows. This written contract stated that Stone and Webster would act as an independent contractor in the performance of the contract. However, another part of the same contract states that Stone and Webster has authority to make purchases for the account of Gulf States. The Joint Ownership Participation and Operating Agreement entered into by Gulf States and Cajun in August of 1979 provided that the instrument did not form a legal partnership under Louisiana and Texas law (Gulf States is a Texas corporation) but that it should be considered and taxed as a general tax partnership for federal and state income tax purposes. Cajun executed a power of attorney designating Stone and Webster agent to purchase movable tangible property for the facility. The tax forms, as we have stated, reflect only 70% of sales.
The above facts clearly demonstrate, as we held in Cajun Electric Power Cooperative, Inc. v. McNamara, supra, that a joint venture was entered into by Gulf States and Cajun, with Stone and Webster, an independent contractor, as purchasing agent for the joint venture. As a joint venture is a legal entity under Louisiana law, it did not enjoy the exemption from taxation enjoyed by an electric cooperative, such as Cajun. Thus, we hold that the trial court erred in holding Stone and Webster liable for sales tax, as Stone and Webster was not an independent contractor for purposes of purchasing materials, it having acted solely in its capacity as agent for that purpose. Rather, we hold the sales tax due solely by the joint venture.
USE TAXES
By far the larger portion of the School Board’s claim involves materials purchased outside the parish, upon the use of which the School Board claims a use tax.
As we have stated, Stone and Webster purchased materials as purchasing agent for the joint venture entered into by Gulf States and Cajun. When these materials were brought into West Feliciana Parish and used, they were used as an incident of their ownership by the joint venture. It is thus false to argue, as defendants seek to argue, that the materials were not used “incident” to their ownership, or that these materials were not “tangible personal property”, both of which criteria the definitions of the word “use” in Section 1.22 of the ordinance would seem to require be met. The materials were in the form of tangible personal property when brought into the parish, and were used by the joint venture incident to their ownership.
Chrysler Corporation v. City of New Orleans, 238 La. 123, 114 So.2d 579 (1959), on remand, 243 La. 498, 145 So.2d 11 (1962), is not applicable in the present case, because in that case, although the contractor, Chrysler, was held not subject to use tax, the owner was not even a party, nor could the owner have been held subject to use tax, as the owner was the United States Government.
Similarly, St. John the Baptist Parish School Board v. Marbury-Pattillo Construction Co., Inc., 259 La. 1133, 254 So.2d 607 (1971), is distinguishable, as that case held that the ultimate owner of a facility for which the contractor purchased the materials in its individual capacity was not subject to use tax, as the materials were no longer personal property at the time construction was completed. In the present case, Stone and Webster purchased the materials as purchasing agent for the joint venture, the joint venture acquiring ownership before the materials were used in construction. Hence, the use tax may be levied. However, we hold, unlike the trial court, that the use tax is due from the joint venture, not from Stone and Webster.
INTEREST AND PENALTY
As a possible barrier to collection of interest, penalties, and attorney’s fees, *812 and to suit itself, defendants argue that the tax must first be assessed by the taxing authority before further action can be taken. (See Ordinance, Section 9.04, quoted in footnote 1.) However, we view assessment as a device which may be used by the taxing authority in its discretion to obtain either compliance or a voluntary settlement, not as a prerequisite to the filing of suit, or to the collection of interest, penalty, and attorney’s fees. Section 9.02 of the ordinance provides that failure to pay the tax causes the tax, interest, penalties, and attorney’s fees to become immediately and ipso facto delinquent, without demand or putting in default. Thus, assessment was unnecessary, the tax being delinquent ipso facto by nonpayment.
Six percent per annum interest and a penalty of an additional five percent for each thirty days of delinquency not to exceed 25% in aggregate are provided in Section 9.03 of the ordinance. It is unnecessary for purposes of awarding these amounts that the taxpayer be held to have been in bad faith. Hence, these sums are clearly due.
However, if the taxpayer makes an incorrect return, and the circumstances indicate willful negligence or intentional disregard of rules and regulations, but no intent to defraud, an additional penalty of 5% is imposed. See Ordinance, Section 9.04.
In the present case, Stone and Webster filed sales and use tax returns reporting only 70% of sales, without indicating that it did not report the entire sales price. It forwarded to Cajun returns that Cajun could use as it deemed necessary, reflecting the remaining 30% of sales. Cajun never filed these returns. Given defendants’ position, that Cajun was tax-exempt, one cannot find this procedure to have constituted an intentional disregard of rules and regulations. Defendants’ position that Cajun’s tax exemption confers tax exemption upon the entire enterprise is not so devoid of merit that we consider a filing of returns on the basis of that position to constitute an intentional violation of rules and regulations.
ATTORNEY’S FEES
By three resolutions, the School Board hired Leon Picou and Cynthia Picou, or their law firm, as attorneys for the present litigation. The School Board was also represented by Jose Cortina, who intervened after trial of the principal matter and contended he alone had been hired as Special Counsel. It is likewise the Picous’ contention they are Special Counsel. Section 9.03 of the Ordinance provides a 10% attorney’s fee. LSA-R.S. 42:263 sets forth rules for the hiring of Special Counsel. Based upon the holding in Schwegmann Bros. Giant Super Markets, Inc. v. Mouton, 309 So.2d 686 (La.App. 4th Cir.1974), writs denied, 310 So.2d 845 (1975), defendants contend that the Picous are not Special Counsel as Leon Picou was district attorney and hence ex-officio counsel for the School Board.
In the trial court, as we have stated, Mr. Cortina sought to intervene to obtain a fee as Special Counsel. A full adjudication of all rights was not had as Mr. Cortina was not permitted to intervene or to take a full part in the hearing to determine whether or not attorney’s fees were due. The trial court’s refusal to permit Mr. Cortina to intervene and take part was founded on the view that the matter would more properly be considered in a separate proceeding. If we were to hold that the Picous were Special Counsel and as such entitled to the 10% attorney’s fee, we would preclude the possibility that Mr. Cortina might obtain the fee. Conversely, if we were to hold the Picous not entitled to the fee, and hence, that no fee was due, we would also be barring the right of Mr. Cortina to obtain his fee. Hence, we dismiss the matter of attorney’s fees as of nonsuit, reserving the parties' rights to proceed against the joint venture.
DECREE
The judgment of the trial court imposing liability against Stone and Webster is reversed, and Stone and Webster is hereby discharged from all liability.
*813 Judgment is rendered in favor of the West Feliciana School Board and against the joint venture composed of Gulf States and Cajun for all sales and use taxes due and owing.
Likewise, interest at the rate of 6% per annum is levied from the date tax was due, and penalty of 25%, both to be paid by the joint venture composed of Cajun and Gulf States.
The judgment of the trial court awarding an additional penalty of 5% is reversed.
The judgment of the trial court awarding 10% attorney’s fees is reversed, and the claim for attorney’s fees nonsuited.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. The pertinent portions of the Ordinance are Sections 9.02, 9.03 and 9.04 which we quote:
SECTION 9.02 Failure to pay any tax due as provided in this ordinance, shall ipso facto, without demand or putting in default, cause said tax, interest, penalties, and costs to become immediately delinquent, and the West Feliciana Parish School Board is hereby vested with authority, on motion in a court of competent jurisdiction, to take a rule on the said dealer, to show cause in not less than two (2) or more than ten (10) days, exclusive of holidays, after the service thereof, which may be tried out of term and in chambers, and shall always be tried by preference, why said dealer should not be ordered to cease from further pursuit of business as a dealer, and in case said rule is made absolute, the order thereon rendered shall be considered a judgment in favor of the West Feliciana Parish School Board, prohibiting such dealer from the further pursuit of said business until such time as he has paid the said delinquent tax, interest, penalties and costs, and every violation of the injunction shall be considered as a contempt of court, and punished according to law.
SECTION 9.03 If the amount of tax due by the dealer is not paid on or before the twentieth (20th) day of the month next following the month for which the tax is due, there shall be collected, with said tax, interest upon said unpaid amount, at the rate of six per cent (6%) per annum, or fractional part thereof, to be computed from the first day of the month next following the month for which the tax is due until it is paid; and in addition to the interest that may be so due there shall also be collected a penalty equivalent to five per cent (5%) for each thirty (30) days, or fraction thereof, of delinquency, not to exceed twenty-five per cent (25%) in aggregate, of the tax due, when such tax is not paid within thirty (30) days of the date the tax first becomes due and payable, and in the event of suit, attorney's fees at the rate of ten per cent (10%) of the aggregate of tax, interest and penalty. SECTION 9.04 In the event any dealer fails to make a report and pay the tax as provided by this ordinance, or in case the dealer makes a grossly incorrect report, or a report that is false or fraudulent, it shall be the duty of the Treasurer to make an estimate for the taxable period of the retail sales, or sales of services, of such dealer, or of the gross proceeds from rentals or leases of tangible personal property by the dealer, and an estimate of the cost price of all articles of tangible personal property imported by the dealer for use or consumption or distribution or storage to be used or consumed in this Parish, and assess and collect the tax and interest, plus penalty, if such have accrued, on the basis of such assessment, which shall be considered prima facie correct, and the burden to show the contrary shall rest upon the dealer. In the event such estimate and assessment requires an examination of books, records, or documents, or an audit thereof, then the Treasurer shall add to the assessment the cost of such examination, together with any penalties accruing thereon. Such costs and penalties when collected shall be placed to the account of the "School Board Sales Tax Fund" in the manner as are the taxes collected under this ordinance.
If any dealer fails to make any return required by this ordinance or makes an incorrect return, and the circumstances indicate willful negligence or intentional disregard of rules and regulations, but no intent to defraud, there shall be imposed, in addition to any other penalties provided herein, a specific penalty of five per cent (5%) of the tax of deficiency found to be due, or Ten Dollars ($10.00), whichever is the greater. This specific penalty shall be an obligation to be collected and accounted for in the same manner as if it were a part of the tax due and can be enforced either in a separate action or in the same action for the collection of the tax.

. Sales and use taxes, interest and penalties, came to $3,857,444.57. Attorney’s fees came to $385,678.35.