**FAIRBANKS NORTH STAR BOROUGH, Appellant,**

v.

**KANDIK CONSTRUCTION, INC. & AS-SOCIATES; Kandik Construction, Inc.; and Roen Design Associates, Inc.; Appellees.**

No. S–2772.

Supreme Court of Alaska.

March 2, 1990.

Rehearing Denied April 2, 1990 for Kandik Const.

Rehearing Granted April 17, 1990 for Roen Design.

R. Everett Harris and Kevin M. Morford, Jensen, Harris & Roth, Anchorage, Mark Andrews, Asst. Borough Atty., and Eugene P. Hardy, Borough Atty., Fairbanks, for appellant.

Joseph L. Paskvan, Hoppner & Paskvan, P.C., Fairbanks, Sam E. Baker, Jr. and Jon G. Hongladarom, Oles, Morrison & Rinker, Seattle, Wash., for appellees Kandik Const., Inc. and Associates and Kandik Const., Inc.

Ronald E. Noel and Robert A. Sparks, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee Roen Design Associates, Inc.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Fairbanks North Star Borough contracted with Roen Design Associates, Inc. (Roen) to prepare an environmental assessment, a feasibility study and the initial plans for the Cripple Creek II subdivision near the City of Fairbanks. *See Fairbanks N. Star Borough v. Roen Design Assocs.*, 727 P.2d 758, 758–59 (Alaska 1986). In a second contract, Roen agreed to survey and design roads for the subdivision. *Id.* at 759. Based on Roen's plans and specifications, the Borough solicited bids for construction of the roads.

The construction contract was awarded to Kandik Construction, Inc. & Associates (hereinafter Kandik & Associates), a joint venture composed of Kandik Construction, Inc., and Carroll Vondra, Inc., d/b/a Yutan Construction Company. The contract required Kandik & Associates to clear, excavate and develop 6.7 miles of new roads for $757,993.64.

Kandik & Associates encountered difficulty in performing the contract according to the plans and specifications prepared by Roen. Specifically, Kandik & Associates asserted that the plans understated the amount of material which had to be excavated and did not provide adequate space to dispose of cleared debris. Kandik & Associates also expressed dissatisfaction with the Borough's engineering and administration of the contract, particularly its failure to implement changes necessary to compensate for the defective plans.

On October 16, 1984, Kandik & Associates submitted an application for payment of $122,747.26. On November 16, Kandik & Associates terminated the contract, giving as reasons the defective design specifications, the lack of Borough administration, and the failure to satisfy the October 16 pay estimate according to the contract.[1] On November 20, Kandik & Associates received partial payment of approximately $72,000 for the October 16 application for payment.

Kandik & Associates filed suit against the Borough and Roen. Kandik & Associates claimed that Roen had been negligent and committed professional malpractice in preparing defective plans and specifications. This claim settled before trial. *Roen*, 727 P.2d at 759. With respect to the Borough, Kandik & Associates asserted causes of action for breach of express and implied warranties of adequacy of design specifications, and breach of the covenant of good faith and fair dealing.[2] Kandik & Associates later amended its complaint to assert a claim for "business destruction" damages resulting from Kandik Construction's loss of bonding capacity and prospective inability to be a "meaningful participant" in the Alaska construction industry. Kandik Construction later entered the case as a named plaintiff.

The Borough denied the allegations and counterclaimed against Kandik & Associates, claiming that Kandik & Associates breached the contract by improperly disposing of organic waste and failing to complete the contract in a timely fashion. The Borough asserted an indemnity cross-claim against Roen.[3]

The jury found that the Borough had breached the contract and returned a verdict awarding Kandik & Associates dam-

---

1. When Kandik & Associates terminated the contract, work was essentially complete except for installation of guard rails, and the roads have been in use since October 15, 1984.

2. Specifically, Kandik & Associates alleged that the Borough breached the duty of good faith and fair dealing because its engineering and administration of the contract interfered with Kandik & Associates' ability to perform its contractual obligations.

3. In earlier proceedings in this case, the superior court entered summary judgment for Roen on the cross claim. *Roen*, 727 P.2d at 759. On appeal, we ruled that, although this dispute was not within the scope of the express indemnity provision, the Borough was entitled to assert a claim for common law indemnity. *Id.* at 760–62. We remanded for further proceedings. *Id.* at 762.

ages of $567,440.[4] Although the jury found that Kandik & Associates had also breached the contract, it found that the Borough suffered no damages from the breach. The jury concluded that Roen was not required to indemnify the Borough for its losses. The court entered judgment on the verdict, and the Borough appealed.

The Borough argues that the superior court erred by (1) refusing to instruct the jury that Kandik & Associates could recover only if it reasonably relied on the plans and specifications, (2) permitting proof of damages under the total cost approach, (3) instructing the jury that Kandik & Associates could recover in quantum meruit, (4) permitting the jury to award damages for equipment costs based on the Blue Book rate, and (5) refusing to admit evidence suggesting that Kandik & Associates falsified its pay records. The Borough also argues that the court erred by permitting Kandik Construction to assert a claim for business destruction damages on the eve of trial and without adequate jury instructions. With respect to the cross claim, the Borough contends that the superior court erred by instructing the jury that the Borough could recover from Roen only if the Borough proximately caused none of the damages suffered by Kandik & Associates.

## II. BREACH OF THE WARRANTY OF PLANS AND SPECIFICATIONS

### A. THE JURY WAS PROPERLY INSTRUCTED THAT KANDIK & ASSOCIATES COULD RECOVER ONLY IF IT REASONABLY RELIED ON THE DEFECTIVE PLANS AND SPECIFICATIONS

■ The Borough argues that the superior court erred in refusing to instruct the jury that Kandik & Associates must have reasonably relied on the plans and specifications in preparing its bid. Kandik & Associates claims that the reliance requirement was adequately addressed in the jury instructions.

The legal sufficiency of a jury instruction is a question of law upon which we will exercise our independent judgment. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

The Borough relies on the decision in *Souza & McCue Construction Co. v. Superior Court*, 57 Cal.2d 508, 20 Cal.Rptr. 634, 635–36, 370 P.2d 338, 339–40 (Cal. 1962), in which the California Supreme Court ruled that a public works contractor who reasonably relies on faulty plans and specifications and submits a bid lower than he would have submitted had the plans been adequate may recover for extra work or expenses incurred as a result of its reliance on the faulty plans. The Borough asserts that Kandik & Associates may not recover its increased expenses because it presented no evidence that, had the plans been adequate, it would have submitted a higher bid. We disagree.

■ A project owner which furnishes plans and specifications to a contractor impliedly warrants their sufficiency. *Northern Corp. v. Chugach Elec. Ass'n*, 523 P.2d 1243, 1246 (Alaska 1974); *appeal after remand*, 562 P.2d 1053 (Alaska 1977), *aff'd on reh'g*, 563 P.2d 883 (Alaska 1977). When the contractor incurs additional expenses attempting to perform a contract pursuant to defective specifications, the contractor is entitled to recover "its extra costs thereafter incurred by reason of the breach of [the] implied warranty." *Id.* at 1247.

It is, of course, necessary that a contractor's reliance on the defective plans be reasonable. *See Northern Corp.*, 523 P.2d at 1246–47 (no damages recoverable from the time the contractor knew or should have known that performance was impossible). In this case, the jury was properly instructed that the Borough impliedly warranted the sufficiency of Roen's design plans. The instruction continued (emphasis added):

In order for Kandik to recover on its claim that the Borough provided it with inadequate plans and specifications, Kandik must prove by a preponderance of

---

**4.** The verdict represented $402,440 for breach of contract and $165,000 for business destruction losses, the entire damages claimed by Kandik & Associates and Kandik Construction.

the evidence each of the following propositions:

*First, that acting reasonably Kandik was misled by incorrect or inadequate contract documents issued by the Borough.*

Second, that due to this inadequacy, Kandik's work was disrupted or delayed.

Third, that due to the disruption or delay, Kandik has been monetarily damaged.

If you find from your consideration of all the evidence that each of the above propositions ha[s] been proved, your verdict should be for Kandik on its claim, even if you find that errors or mistakes of the Borough's engineer were the cause of Kandik's problems.

On the other hand, if you find that any of the above propositions have not been proved, your verdict should be for the Borough on the claim.

By its terms, this instruction informed the jury that Kandik & Associates could recover for additional expenses incurred as a result of defects in Roen's design plans. The jury was specifically told that Kandik & Associates, "acting reasonably," must have been "misled" by the inaccurate plans to its detriment. We conclude that this is a correct statement of the law which adequately conveyed the reliance requirement to the jury; therefore, we refuse to set aside the verdict on this basis.

### B. THE SUPERIOR COURT ERRED IN PERMITTING KANDIK & ASSOCIATES TO USE A TOTAL COST APPROACH WITHOUT ALSO INSTRUCTING THE JURY AS TO THE SPECIFIC DAMAGES RECOVERABLE FOR BREACH OF CONTRACT

■ The Borough argues that the superior court erred in permitting Kandik & Associates to argue a "total cost approach" to damages because it did not fairly segregate the excess costs incurred by Kandik & Associates as a direct result of the faulty design plans. Kandik & Associates contends that it is entitled to recover its total actual cost of the project, plus 20.20% overhead and profit, less actual payments made by the Borough.[5]

■ Although a contractor need not prove damages with mathematical precision, it may only recover those damages which it proves with reasonable certainty. *State v. Northwestern Constr.*, 741 P.2d 235, 237 (Alaska 1987). "Recovery of damages for a breach of contract is not allowed unless acceptable evidence demonstrates that the damages claimed resulted from and were caused by the breach." *Boyajian v. United States*, 191 Ct.Cl. 233, 423 F.2d 1231, 1235 (1970).

■ In *F.H. McGraw & Co. v. United States*, 131 Ct.Cl. 501, 130 F.Supp. 394, 399–401 (1955), the court rejected the use of the total cost approach to prove damages resulting from defective plans and specifications. The court stated:

The plaintiff claims the difference between the original contract price for all the work, as increased by change orders, and its direct cost of completing the job....

This method of proving damages is by no means satisfactory, because, among other things, it assumes plaintiff's costs were reasonable and that plaintiff was not responsible for any increases in cost, and because it assumes plaintiff's bid was accurately computed, which is not always the case, by any means.

*Id.* at 399–400. *See also U.S. Indus. v. Blake Constr. Co.*, 217 U.S.App.D.C. 33, 671 F.2d 539, 547 (1982) (total cost method is disfavored because "it assumes that the defendant's breach was the cause of all the extra cost"); *Laburnum Constr. Corp. v. United States*, 163 Ct.Cl. 339, 325 F.2d 451, 459 (1963) (measure of damages resulting from delay caused by defective specifica-

---

5. Kandik & Associates submitted a damage summary which showed its total actual cost for the project to be $1,018,158.79. It added 20.20% profit and overhead, which amounted to $205,668.08. The Borough had paid $798,107.61.

Kandik & Associates thus claimed that it was entitled to recover $425,719.26. During trial, Kandik & Associates revised its estimate, and claimed that the Borough was liable to pay $402,440. The jury awarded that amount.

tions is the contractor's actual costs during the period of delay). Although the total cost approach may be a permissible starting point for the assessment of damages, the plaintiff must relate the specific amount of increased costs to the particular breach. *Boyajian*, 423 F.2d at 1235. The contractor's failure to present any evidence demonstrating its increased costs justifies dismissal of its claims. *Id.* at 1235–36.

■ In this case, the court refused to give the jury any specific instruction which would have enabled the jury to limit the award of damages to those proximately flowing from the Borough's breach of contract. We believe that the evidence combined with the jury instructions permitted the jury to impose liability on the Borough far in excess of the damages proximately resulting from its breach of contract; therefore, we believe that the jury verdict must be set aside unless, as Kandik & Associates contends, it may be justified under an alternate theory of quantum meruit.[6]

## C. THE SUPERIOR COURT ERRED IN INSTRUCTING THE JURY THAT KANDIK & ASSOCIATES COULD RECOVER IN QUANTUM MERUIT FOR WORK WITHIN THE SCOPE OF THE CONTRACT

■ The Borough argues that the superior court erred in instructing the jury on recovery in quantum meruit because Kandik & Associates sought recovery under an express contract rather than a contract implied in law. Kandik & Associates contends that quantum meruit recovery was available because, as a matter of fact, it was forced to perform work markedly different from that contemplated by the express contract.

■ When the parties have an express contract which covers the services in ques-

tion, quantum meruit relief is not available. *Mitford v. de LaSala*, 666 P.2d 1000, 1006 n. 1 (Alaska 1983); *B.B. & S. Constr. Co. v. Stone*, 535 P.2d 271, 275 n. 8 (Alaska 1975). In the construction context, this rule has been applied to preclude recovery in quantum meruit for services within the scope of the original contract; however, a contractor who is compelled to perform work or provide materials beyond that contemplated in the original contract may be able to recover the reasonable value of the extra work and materials. *Harrington v. McCarthy*, 91 Idaho 307, 420 P.2d 790, 794 (Idaho 1966) (contractor entitled to recover reasonable value of extra work and materials required from changes made by owner); *Higgins v. City of Fillmore*, 639 P.2d 192, 194–95 (Utah 1981) (contractor entitled to recover for extra gravel at the contract unit price); *Modern Builders v. Manke*, 27 Wash.App. 86, 615 P.2d 1332, 1337–38 (1980) (contractor may recover contract price plus reasonable value of extra work). However, if the contractor should have discovered or anticipated the need for the work or materials, the contractor is not entitled to quantum meruit relief. *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wash.2d 7, 514 P.2d 1381, 1386 (1973); *Bignold v. King County*, 65 Wash.2d 817, 399 P.2d 611, 614 (1965).

The superior court instructed the jury that

Kandik claims that the Borough so totally breached its contract that Kandik is entitled to payment based upon the reasonable value of its work based on actual costs rather than payment based upon the contract price plus damages for any specific breaches. This theory is what is known in the law as *quantum meruit*. In order to sustain its burden of proof that it is entitled to recovery in *quantum*

---

**6.** The total cost evidence presented in this case suffers from a second flaw. Kandik & Associates included in its total costs a profit and overhead margin of 20.20%. However, section 11.6.2 of the standard conditions provided a maximum of 5% to 10% profit margin for change orders resulting from additional work. Although the Borough proposed instructions which would have informed the jury of the contract profit and overhead limitations, the superior court refused to use them. On remand, we believe that Kandik & Associates may recover profit and overhead subject to the contract limits contained in the contract between the Borough and Kandik & Associates.

*meruit,* plaintiff must prove each of the following three elements:

First, the originally contracted work was materially changed, disrupted, and/or delayed by events for which the Borough was responsible;

Second, the changes, disruptions, and/or delays were not within the reasonable contemplation of the parties; and;

Third, the effect of the changes, disruptions, and/or delays was to require extra work and materials or to cause substantial loss to the contractor.

We conclude that this instruction misstates the law because it permits Kandik & Associates to recover in quantum meruit for work within the scope of the original contract. In other words, it fails to distinguish between those damages for which Kandik & Associates may recover only under the contract and those which, if proven, may be recovered under a theory of quantum meruit.

Because the jury verdict for Kandik & Associates may not be determined under the total cost approach, and because the jury was improperly instructed on the availability of recovery in quantum meruit, the superior court erred in entering judgment on the verdict. The Borough is entitled to a new trial on the issue of damages.

### D. THE SUPERIOR COURT ERRED IN PERMITTING THE JURY TO AWARD EQUIPMENT COSTS BASED ON BLUE BOOK RATES RATHER THAN PREVAILING COSTS IN THE FAIRBANKS AREA

 The Borough argues that the superior court erred in permitting the jury to consider Blue Book rates in determining equipment costs prevailing in the Fairbanks area. Kandik & Associates contends that Blue Book rates were relevant and admissible to prove the rates prevailing in Fairbanks.

In *State v. Northwestern Construction,* 741 P.2d at 237–38, we approved an award of damages for equipment costs based on Blue Book equipment rates where the contract approved the use of Blue Book rates and the Blue Book was used to negotiate claims on behalf of the owner. Kandik & Associates contends that *Northwestern* compels the conclusion that the instruction in this case was correct.

The provisions in the contract in the case at bar are materially different from those in the contract construed in *Northwestern.* Sections 11.3.1 and 11.3.3 of the construction contract provide that the value of any work covered by a claim for an increase in the contract price may be calculated by unit prices or the cost of the work. Section 11.4 defines "cost of the work" as "the sum of all costs necessarily incurred and paid by the CONTRACTOR.... [S]uch costs shall be in *amounts no higher than those prevailing in the locality of the Project.*" (Emphasis added). The court instructed the jury that it "may consider 'Blue Book' or evidence of Fairbanks area rental rates for determining equipment ownership costs."

We believe that this instruction was clearly erroneous. By permitting the jury to consider *either* Blue Book *or* prevailing rates, the court ignored sections 11.3.3 and 11.4 of the contract, which established the prevailing Fairbanks rates as the appropriate measure of damages. There was no evidence that Blue Book rates were the same as the prevailing equipment rental rates in Fairbanks. Thus, the Blue Book rates do not provide an alternative measure of damages under this contract.

### E. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING EVIDENCE SUGGESTING THAT KANDIK & ASSOCIATES FALSIFIED PAYROLL RECORDS

 The Borough argues that the superior court abused its discretion in refusing to allow it to present evidence that Kandik & Associates falsified payroll records. Kandik & Associates contends that the superior court properly refused to admit the evidence, because the potential for prejudice outweighed its probative value.

The contract required Kandik & Associates to pay prevailing wages pursuant to the Little Davis–Bacon Act, AS 36.05.010. During trial, the Borough attempted to introduce evidence that Kandik & Associates actually paid wages at less than the prevailing rate, then understated the hours worked to make it appear as though it had complied with AS 36.05.010. Kandik & Associates asserted that the discrepancy between the hours actually worked and the hours reported resulted from employment of the same individuals on other jobs; thus, the total hours worked by a given employee might exceed the number of hours worked on the Cripple Creek II project. The superior court ruled the evidence inadmissible under Alaska Rule of Evidence 403, concluding that the potential for prejudice outweighed its probative value.

■■■■ All relevant evidence is admissible unless otherwise provided by law. Alaska R.Evid. 402. Evidence Rule 403 gives the superior court discretion to exclude relevant evidence if "its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." When the balance between prejudice and probativity is close, the court should generally admit the evidence. Alaska R.Evid. 403 commentary. We will reverse a decision to exclude relevant evidence only upon a clear abuse of discretion. *Babinec v. State*, 586 P.2d 966, 968 (Alaska 1978).

■■■ Although the evidence proffered by the Borough was arguably relevant to impeach the general reliability of Kandik & Associates' business records, we are not persuaded that the court's decision to exclude the evidence was a clear abuse of discretion. Given the complexity of the

issues at trial, the superior court could conclude that the probative value of the evidence was outweighed by the danger of prejudice, confusion of the issues and waste of time. This is particularly true in light of the factual dispute between the parties as to the propriety of Kandik & Associates' reporting procedure. It was not necessary for the court to suffer a trial within a trial on this minor issue.[7]

## III. THE BUSINESS DESTRUCTION CLAIM

■■■ The Borough argues that the superior court abused its discretion in permitting Kandik Construction to join the case as a party plaintiff on the eve of trial, and in failing to instruct the jury on the nature of the claim it asserted.

Kandik & Associates initially sought damages against the Borough only for breach of contract. In April 1987, Kandik & Associates filed an amended complaint which included a claim that Kandik & Associates was entitled to recover damages because the Borough's conduct destroyed its ability to continue in business.[8] The Borough moved for summary judgment on the grounds that Kandik & Associates' existence as a joint venture ended by its own terms and not as a result of any misconduct by the Borough, and that Kandik Construction was not a party to the lawsuit. In December 1987, three weeks before trial and more than two months after the final day to amend the pleadings, Kandik Construction moved to join the lawsuit as a party plaintiff. Immediately before voir dire, the superior court added Kandik Construction as a party without requiring it to file any pleadings. The jury was never instructed that Kandik & Associates and Kandik Construction were different entities, nor did the court explain the nature of the claims asserted by each.

---

7. The Borough also argues that the superior court erred in refusing to direct a verdict that Kandik & Associates breached the contract, and in instructing the jury that it could terminate the contract for "any material and substantial breach." Because the jury returned a special verdict that Kandik & Associates breached the contract, we hold that any error was harmless. Alaska R.Civ.P. 61.

8. Although it is not clear from the four corners of the amended complaint that Kandik & Associates was asserting the claim for damages sustained by Kandik Construction, the evidence suggests that the Borough was aware that Kandik Construction was the injured entity.

The Borough contends that the superior court erred in permitting the addition of Kandik Construction on the eve of trial. Kandik & Associates replies that the Borough was aware from the time that the claim was first asserted in April 1987 that Kandik Construction was the real party in interest. Kandik thus reasons that joinder was appropriate pursuant to Civil Rule 17.

Civil Rule 17(a) expressly requires that every action be prosecuted in the name of the real party in interest. Alaska R.Civ.P. 17(a). It further provides, however, that no claim should be dismissed for failure to name the real party in interest unless a reasonable time is allowed after objection for ratification, substitution, or joinder of the real party. *Id.; Truckweld Equipment Co. v. Swenson Trucking & Excavating*, 649 P.2d 234, 239 (Alaska 1982). Joinder of the real party in interest has the same effect as if the action had been commenced in the name of the real party in interest. Alaska R.Civ.P. 17(a). The question whether to permit or require joinder rests in the sound discretion of the superior court. *Truckweld*, 649 P.2d at 235.

Kandik Construction maintains that the claim for business destruction damages sounds in both tort and contract, and that Kandik Construction has standing to assert a claim under either theory.[9] Although this is a close issue, we believe that the superior court did not abuse its discretion in adding Kandik Construction as a party plaintiff. The Borough had notice of the business destruction claim no later than April 1987, and it knew that the business purportedly destroyed was that of Kandik Construction and not Kandik & Associates. Thus, it had the ability to prepare a defense. Although Kandik Construction was not formally made a party until the eve of trial, it did join within a reasonable time after the Borough first objected to the claim on this basis. We hold that the court acted within its discretion in permitting

Kandik Construction to join the case under Civil Rule 17(a).

The court's failure to instruct the jury on the identity of the parties and the nature of their claims, however, is not so easily disregarded. In this connection, we agree with the Borough that the instructions pertaining to the business destruction claim were wholly inadequate to apprise the jury of the proper legal standards for recovery. As we observed in *Poulin v. Zartman*, 542 P.2d 251, 271 (Alaska 1975), *aff'd on reh'g*, 548 P.2d 1299 (Alaska 1976),

[I]n a lengthy and complex case involving two theories of liability which are closely intertwined, yet wholly separate and distinct, it is incumbent upon the trial judge to make clear to the jury, in some manner, that the law recognizes and acknowledges the distinctions in the theories and that the jury must do likewise in rendering its verdict.

In this case, the court did not explain to the jury why the Borough might be liable to Kandik & Associates as opposed to Kandik Construction. Further, the court failed to explain to the jury that they were separate legal entities.

Although the amended complaint appears to assert causes of action sounding in tort and contract, the jury was never instructed on the requirements for recovery under either theory. The jury was merely instructed that "Kandik" claimed destruction of its business as a result of "claimed breaches of contract, tortious or wrongful conduct of the Borough," and that "Kandik is entitled to recover damages for these losses based on this theory if you decide it is more likely than not that the Borough's actions or inactions were the legal cause of the destruction of Kandik's business."

The instruction fails to adequately advise the jury of the nature of the theory of liability. It is utterly devoid of references to the elements of any recognized intentional or negligent tort. Moreover, it fails to identify the contract under which Kan-

---

**9.** Kandik Construction relies on the decision in *Lignell v. Berg*, 593 P.2d 800 (Utah 1979), to support its contention that it may assert a breach of contract claim against the Borough, even though Kandik Construction was not a party to the contract between Kandik & Associates and the Borough.

dik asserts the right to damages, or to inform the jury under what theory Kandik Construction might recover under the contract between the Borough and Kandik & Associates. Accordingly, we hold that the award of damages for the destruction of Kandik Construction's business must be reversed and remanded for further proceedings.

## IV. THE INDEMNITY CLAIM

■ The Borough argues that the superior court erred in instructing the jury that it could recover from Roen only if "all of the damages suffered by Kandik were legally caused by Roen's professional negligence." Specifically, the Borough contends that principles of comparative fault apply to common law indemnity claims between parties to a contract. Roen contends that the jury was properly instructed that the Borough was not entitled to indemnity from Roen unless the Borough was free from fault.

After Kandik & Associates sued the Borough and Roen, the Borough cross-claimed against Roen. The Borough asserted three separate theories of recovery sounding in tort, contract, and indemnity. The superior court initially ruled that the Borough had no cause of action for indemnity; however, on appeal, we held that the Borough could assert a claim for common law indemnity, even if the claim was not within the contract indemnity provision. *Roen,* 727 P.2d at 760–62.

The Borough proposed an instruction which would permit the jury to return a verdict for the Borough if it found that (1) Roen failed to exercise reasonable care, thereby committing negligence and breaching its contract with the Borough, (2) Roen's negligence caused Kandik & Associates' and Kandik Construction's damages, and (3) Kandik & Associates or Kandik Construction was entitled to recover damages from the Borough. This instruction has elements of all three causes of action asserted in the crossclaim.

The court instructed the jury that Roen was liable to the Borough only if (1) Roen was professionally negligent, (2) all of Kan-

dik's damages were legally caused by Roen's negligence, and (3) none of Kandik's damages resulted from the Borough's negligence or breach of contract. The Borough contends that the second prong of this instruction is erroneous, because it misstates the cause of action for implied contractual indemnity. We agree that the instruction is wrong, but for reasons different from those asserted by the Borough.

■ Indemnity is generally defined as the obligation of one party to make good a loss suffered by another. *Bear Creek Planning Committee v. Title Ins. & Trust Co.,* 164 Cal.App.3d 1227, 211 Cal.Rptr. 172, 178 (1985). The obligation may arise from an express contractual indemnity provision, it may be implied from a contract which does not otherwise require indemnity, or it may arise from the equities surrounding a particular claim. *Id.*

■ To date we have addressed the cause of action for implied indemnity only in the context of allocating liability among joint tortfeasors. *E.g., State Mechanical v. Liquid Air,* 665 P.2d 15, 17 (Alaska 1983) (special verdict that claimant was actively negligent precluded assertion of indemnity claim); *Vertecs Corp. v. Reichhold Chemicals,* 661 P.2d 619 (Alaska 1983). In contrast, an innocent party who merely passes on an already defective product in the stream of commerce is entitled to implied noncontractual indemnity from the product producer, provided that the producer had proper notice of the litigation against the innocent party and an opportunity to undertake the defense of the case. *Koehring Mfg. v. Earthmovers of Fairbanks,* 763 P.2d 499, 503 (Alaska 1988); *Ross Laboratories v. Thies,* 725 P.2d 1076, 1081 (Alaska 1986); *D.G. Shelter Prods. v. Moduline Indus.,* 684 P.2d 839, 841 (Alaska 1984). Of course, a concurrently negligent tortfeasor may be entitled to indemnity pursuant to an express indemnity agreement. *E.g., City of Juneau v. Alaska Elec. Light & Power Co.,* 622 P.2d 954, 956 & 958 n. 8 (Alaska 1981).

■ In *Bear Creek,* a homeowners association was held liable for slander of title

after it attempted to enforce restrictive covenants which had not been properly recorded against all lots in a subdivision. 211 Cal.Rptr. at 177. The association then sued a title company which had breached its contractual obligation to record the covenants. *Id.* The court noted that the rationale underlying the cause of action for implied contractual indemnity was that the indemnitor's agreement to perform a contract necessarily implies an obligation to perform in a proper manner and to discharge foreseeable damages resulting to the plaintiff as a result of its breach. *Id.* at 178. Unlike a claim for implied indemnity among tortfeasors, an implied contractual indemnity claim "is grounded upon the indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual duties." *Id.* at 179. The indemnitee's liability to a third party must be a foreseeable result of the indemnitor's breach of contract. *Id.* The court stated:

> Implied contractual indemnity is not based upon equitable considerations, but upon a contractual relationship between the indemnitee and indemnitor from which is implied an obligation on the part of the indemnitor to assume and pay any foreseeable damages assessed against the indemnitee as a result of the indemnitor's breach of contract.

*Id.* at 180. Active participation by the indemnitee in the indemnitor's wrong may preclude recovery on an implied contract theory. *Id.* at 181. *See also Zontelli & Sons v. City of Nashwauk*, 373 N.W.2d 744 (Minn.1985) (permitting a project owner to recover partial indemnity from the project engineer, because the owner incurred liability to the contractor as a foreseeable result of the breach of a contract duty owed by the engineer to the owner).

We fail to perceive how recovery under a theory of implied contractual indemnity under the circumstances presented here adds anything to the relief available to the Borough under its causes of action for tort and breach of contract. If Roen committed professional malpractice, the Borough is entitled to recover all damages proximately resulting from the tort. If Roen breached the implied warranty of plans and specifica-

tions, the Borough could sue Roen for breach of contract and recover all damages that Roen had reason to foresee as a probable result of the breach. *Native Alaskan Reclamation & Pest Control v. United Bank Alaska*, 685 P.2d 1211, 1219–20 (Alaska 1984); Restatement (Second) of Contracts § 351 (1981). In either case, Roen may defend on the grounds that the damages were not foreseeable, or that they did not proximately result or naturally flow from its conduct.

In this case, we believe that the jury verdict in favor of Roen must be reversed. The Borough properly pleaded direct causes of action against Roen sounding in tort and contract. It then submitted a jury instruction which, although not a model of clarity, contained the essential elements of these claims. However, the instruction actually read to the jury permitted the Borough to recover only if it was not responsible for any of the damages to Kandik & Associates or Kandik Construction. This was an erroneous statement of the law which may have affected the jury's verdict; therefore, the Borough is entitled to a new trial on the question whether Roen is liable for any part of the damages assessed against the Borough. Given the availability of damages under these theories, we do not decide whether principles of comparative fault apply to contractual implied indemnity claims.

The decision of the superior court is REVERSED in part and REMANDED. The Borough is entitled to a new trial on the issue of the amount of damages, if any, recoverable by Kandik & Associates or Kandik Construction under recognized theories of tort or contract. The Borough is also entitled to a new trial on the question whether Roen is liable to the Borough under a theory of tort or contract.