SALT LAKE KNEE & SPORTS REHA-BILITATION, INC., fka Professional Therapy, Inc., Plaintiff and Appellant,

v.

SALT LAKE CITY KNEE & SPORTS MEDICINE, a Utah general partnership; Lonnie E. Paulos, M.D., P.C., a Utah professional corporation; and Thomas D. Rosenberg, M.D., P.C., a Utah professional corporation, general partners, Defendants and Appellees.

No. 940417–CA.

Court of Appeals of Utah.

Dec. 21, 1995.

John C. Green and Kim M. Luhn, Salt Lake City, for Appellant.

Mark O. Morris and Jeffrey T. Sivertsen, Salt Lake City, for Appellees.

Before DAVIS, BENCH and BILLINGS, JJ.

DAVIS, Associate Presiding Judge:

Appellant, Salt Lake Knee & Sports Rehabilitation, Inc. (Rehabilitation) challenges the trial court's order granting summary judgment to appellees, Salt Lake City Knee & Sports Medicine (Physicians), a general partnership; and its general partners, Lonnie E. Paulos, M.D., P.C., a Utah professional corporation (Paulos); and Thomas D. Rosenberg, M.D., P.C., a Utah professional corporation (Rosenberg). We reverse and remand.

## FACTS

Rehabilitation and Physicians formerly worked together providing medical and physical therapy services at the Salt Lake Sports Medicine Center (Center) located at 670 East 3900 South, Salt Lake City, Utah, under the terms of a professional services agreement. On May 22, 1989, these parties entered into a termination agreement and purchase agreement (Agreement) which terminated the parties' professional services contract. Paragraph eleven of this Agreement stated:

> *Purchase of Center.* It is agreed that if within two (2) years from the date of this Agreement, Physicians sells the Center to any third party, Rehabilitation shall be entitled to one-third (⅓) of that portion of the purchase price which is attributed to good will. 'Sale' shall be defined as a transfer wherein the purchaser acquires and pays consideration for all of the following: The Center's lease on the Leased Premises, ownership of the name 'Salt Lake Sports Medicine Center,' all of the

equipment and other assets located at the Center, the Center's patients and accounts receivable, and whereby the purchaser assumes complete operational control of the business of the Center and continues operating under the same name at the same location.

On May 24, 1990, Physicians entered into an asset purchase agreement with IHC Hospitals (IHC) pursuant to which Physicians sold IHC an undivided one-half interest in the Center. Physicians and IHC then formed a joint venture called "Sports Medicine West" and transferred their respective one-half interests thereto.

The joint venture continued to do business at the Center's location and it temporarily retained Physicians as its agent to manage and operate the business. At some point in time, Sports Medicine West changed the Center's name from "Salt Lake Sports Medicine Center" to "Sports Medicine West." The parties dispute precisely when Sports Medicine West changed the Center's name, however it is undisputed that the name was not changed until at least one year before the action in this case was filed, approximately October 1990.

On October 4, 1991, Rehabilitation filed a complaint for declaratory relief, alleging that the transactions between IHC and Physicians constituted a "sale" under paragraph eleven of the Agreement. Physicians filed a motion for summary judgment on June 15, 1993, and Rehabilitation filed a counter-motion for summary judgment shortly thereafter.

After hearing oral argument on the motions, the trial court permitted further briefing on the parties' interpretations of the meaning of "sale" as defined by the Agreement. On November 15, 1993, the court heard additional oral argument on the subject and ruled that to constitute a sale, the transaction "must include all of the following ... items [from paragraph eleven]. And from those items, it must ... [include] all of the equipment and assets, and they [the purchaser] must have complete operational control." The court ruled that the transfer of one-half of the interest in the Center to IHC

was not a sale and rejected Rehabilitation's argument that the transfer of all assets to the joint venture was a "sale." Therefore, the court granted summary judgment in favor of Physicians on November 15, 1993.

Rehabilitation filed a "motion for reconsideration" of the trial court's ruling on November 29, 1993. The trial court heard the motion on January 28, 1994, and again ruled in favor of Physicians. An order to this effect was entered on March 14, 1994. On April 11, 1994, Rehabilitation filed this appeal.

ISSUES AND STANDARDS OF REVIEW

■ There are essentially two issues presented on appeal. The first issue concerns the timeliness of Rehabilitation's appeal. "[I]t is axiomatic in this jurisdiction that failure to timely perfect an appeal is a jurisdictional failure requiring dismissal of the appeal." *Prowswood, Inc. v. Mountain Fuel Supply Co.*, 676 P.2d 952, 955 (Utah 1984). The second issue presented is whether the trial court erred in granting summary judgment to Physicians based upon its conclusion that the transaction between IHC and Physicians was not a "sale" within the meaning of paragraph eleven of the Agreement. Summary judgment is appropriate in a case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781 (Utah App.1995). In determining the propriety of a grant of summary judgment, we view the facts in the light most favorable to the position of the losing party. *Warburton*, 899 P.2d at 781. We review the trial court's legal conclusions for correctness. *Id.*

ANALYSIS

1. Timeliness of the Appeal

■ Physicians argues that Rehabilitation's motion for reconsideration did not toll the running of the time in which to appeal, and hence Rehabilitation's appeal was untimely.[1] It is by now well established that the Utah Rules of Civil Procedure do not provide for a "motion for reconsideration" of a trial court's ruling. *Ron Shepherd Ins., Inc. v. Shields*, 882 P.2d 650, 653 n. 4 (Utah 1994); *accord Watkiss & Campbell v. Foa & Son*, 808 P.2d 1061, 1064 (Utah 1991). Nonetheless, we have "reviewed motions so entitled if they could have properly been brought under some rule and were merely incorrectly titled." *Shields*, 882 P.2d at 653 n. 4; *see also Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1310 n. 2 (Utah App.1994) (noting that "the substance, not caption, of a motion is dispositive in determining the character of the motion").

■ In this case, Rehabilitation captioned its motion as a motion for reconsideration. However, our review indicates that the substance of the motion was essentially identical to a motion for new trial under Rule 59(a) of the Utah Rules of Civil Procedure. Specifically, Rehabilitation argued that the trial court made several errors of law which are grounds for relief under Rule 59(a)(7). In addition, by conducting a hearing and reaffirming its legal conclusions, the trial court ruled upon the motion as if it were a motion for a new trial. Therefore, as in *Watkiss & Campbell*,

> [u]nder the facts of this case, the incorrect title placed upon the pleading was not a bar to defendant's case. Indeed, the record reflects that the judge ruled on the motion as if it were a motion for a new trial. Because the court treated the motion to reconsider as a motion for a new trial, we conclude that the filing of the motion tolled the time in which to file an appeal.

*Id.* at 1064–65 (footnotes omitted).

We conclude that Rehabilitation's motion to reconsider is substantively a motion for a

---

1. We have considered Physicians's other arguments on this issue, including the contentions that Rehabilitation simply filed a motion for clarification and that there is some significance to be attached to the timing of the entry of the summary judgment order, and reject them as being without merit. *See State v. Allen*, 839 P.2d 291, 303 (Utah 1992); *State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989), *cert. denied*, — U.S. —, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995).

new trial, and as such it tolled the time for filing an appeal. Rehabilitation's appeal was thus timely.[2]

## 2. Summary Judgment

The trial court granted Physicians's motion for summary judgment on the basis that a "sale" to a "third" party within the meaning of paragraph eleven of the Agreement had not occurred. The court stated it was "unpersuaded" by Rehabilitation's argument that all of the assets were transferred to the new joint venture, Sports Medicine West. Thus, the only transfer considered by the court was the transfer of one-half of the interest in the Center to IHC. Because a transfer of less than "all" of the interest in the Center does not trigger the "sale" definition in paragraph eleven, the court granted summary judgment to Physicians.

The trial court's rationale for rejecting Rehabilitation's argument that all of the assets were transferred to the joint venture, Sports Medicine West, is unclear. Physicians claims, however, that because it is a co-owner of Sports Medicine West, the joint venture cannot be a "third party" within the meaning of paragraph eleven. We disagree.

■ A joint venture is defined as "an association of two or more persons to carry on as co-owners of a single business enterprise." Utah Code Ann. § 48–1–3.1(1) (1994). Joint ventures are subject to the same rules as partnerships. *Id.* § 48–1–3.1(2); *Kemp v. Murray,* 680 P.2d 758, 759 n. 1 (Utah 1984); *Hoth v. White,* 799 P.2d 213, 218 (Utah App. 1990). Based upon the statutes governing partnerships, the Utah Supreme Court has ruled that partnerships are distinct and separate legal entities. *See Cottonwood Mall Co. v. Sine,* 767 P.2d 499, 501 (Utah 1988) (noting several sections of the Uniform Partnership Act treating partnership as a separate legal entity); *Wall Inv. Co. v. Garden Gate Dis-*

*trib., Inc.,* 593 P.2d 542, 544 (Utah 1979) (noting partnership is legal entity distinct from partners). Because these statutes apply equally to joint ventures, it follows that joint ventures are also distinct and separate legal entities. *See Sine,* 767 P.2d at 501 (concluding that joint ventures have capacity to sue in their own names, relying on authority treating partnerships as distinct entities).

■ We therefore conclude that, under Utah law, joint ventures are separate legal entities. Our conclusion is consistent with rulings in several other jurisdictions. *See Fairbanks N. Star Borough v. Kandik Constr., Inc.,* 795 P.2d 793, 802 (Alaska 1990) (inferentially holding that joint venture is a separate legal entity), *vacated in part on other grounds,* 823 P.2d 632 (Alaska 1991); *First State Serv. Corp. v. Hector's Concrete Constr., Inc.,* 168 Ariz. 442, 814 P.2d 783, 783 (App.1991) (joint venture is a separate legal entity); *C.H. Leavell & Co. v. Tax Comm'n,* 450 P.2d 211, 214 (Okla.1968) (same); *Lawler v. Dallas Statler–Hilton Joint Venture,* 793 S.W.2d 27, 33 (Tex.Ct.App.1990) (same).[3] *But see Lewis v. Gardner Eng'g Corp.,* 254 Ark. 17, 491 S.W.2d 778, 779 (1973) (joint venture not a separate legal entity); *Elting Ctr. Corp. v. Diversified Title Corp.,* 306 So.2d 542, 543 (Fla.Dist.Ct.App.1974) (same), *cert. denied,* 321 So.2d 554 (Fla.1975). As a separate legal entity, Sports Medicine West is a "third party" within the meaning of paragraph eleven.

■ In addition, Physicians was paid by IHC for an undivided one-half interest in its assets, and it received a one-half interest in the joint venture for the other one-half of the assets. Therefore, the paragraph eleven requirement that consideration be paid for the assets was also satisfied. Sports Medicine West also has complete operational control of the Center as evidenced by the terms of the

---

**2.** Notwithstanding our conclusion, we are not approving the use of pleadings identified as something not provided for in the Utah Rules of Civil Procedure. Such a practice could seriously compromise the position of a litigant where a "motion for reconsideration," for example, was not substantively a motion enumerated under Rule 4(b) of the Utah Rules of Appellate Procedure, or where other litigants or third parties acted or failed to act in reliance only on the

name of the pleading possibly obtained from a docket entry.

**3.** Louisiana has not adopted the Uniform Partnership Act, but also considers joint ventures to be separate legal entities. *West Feliciana Parish Sch. Bd. v. Gulf States Utils. Co.,* 486 So.2d 808, 811 (La.Ct.App.1986).

Management Agreement stating that Sports Medicine West had complete "day-to day" operational control of the rehabilitation business.

Finally, according to the parties, the only remaining issue is whether the joint venture continued operating the business under the name "Salt Lake Sports Medicine Center." The trial court did not reach this issue,[4] notwithstanding disputed, material facts, having resolved the matter on the issue of sale of assets. Because of the existence of disputed material facts, the issue of whether the joint venture continued to operate the business under the same name is remanded to the trial court for determination.

## CONCLUSION

The joint venture Sports Medicine West is a distinct and separate legal entity from Physicians, and from Paulos and Rosenberg, the general partners of Physicians. As such, it is a "third person" within the meaning of paragraph eleven. In addition, consideration was paid for the assets and Sports Medicine West assumed full operational control of the Center. Thus, we reverse the trial court's grant of summary judgment to Physicians based upon the finding that only one-half of the assets were transferred to IHC. It appears that material issues of fact exist regarding the question of whether Sports Medicine West continued to operate the Center under the same name. We therefore remand the matter for further proceedings consistent with this opinion.

BILLINGS, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur in holding that this appeal was timely filed. I dissent, however, from the reversal of the summary judgment.

As to the timeliness of the appeal, I agree that Rehabilitation's "motion for reconsideration" was essentially a Rule 59 motion for a new trial. *See State v. Parker*, 872 P.2d

1041, 1044 (Utah App.) (holding substance of post-judgment motion controls, not caption), *cert. denied* 883 P.2d 1359 (Utah 1994). We have previously held that a motion for a new trial may properly be filed following entry of a summary judgment. *Moon Lake Elec. Ass'n, Inc. v. Ultrasystems W. Constrs., Inc.*, 767 P.2d 125, 127 (Utah App.1988). Our rules explicitly provide that "the time for appeal for all parties shall run from the entry of the order denying a new trial." Utah R.App.P. 4(b). The filing of a motion under Rule 59 therefore tolls the time for filing a notice of appeal.

On the merits, I disagree with the main opinion's analysis and result. The contract between the parties provides that Physicians will share the sale proceeds attributable to "good will" only when Physicians sell the entire Center to a third party. In the transaction involving IHC, Physicians clearly retained an ownership interest in the Center.

The fact that the Center is now operated as a joint venture does not lead to the result reached by the main opinion. The joint venture statute provides that the only way Physicians can participate in a joint venture is if it is a co-owner. *See* Utah Code Ann. § 48–1–3.1(1) (1995) ("[a] joint venture is an association of two or more persons to carry on as *co-owners* of a single business enterprise.") (emphasis added). Since Physicians indisputably remains a co-owner of the Center, it has not sold it as contemplated by paragraph eleven of the parties' agreement.

I would therefore affirm the summary judgment.

---

4. The trial court also did not reach the subsidiary issue of whether to strike the affidavits submitted by Rehabilitation. We note however, that even if the trial court had struck Rehabilitation's affidavits, the affidavit submitted by Physicians establishes nonetheless that the name of the business remained unchanged for several months.