**GREAT AMERICAN INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**H. C. EVANS, doing business as Evans Van & Storage Company, and Lloyd E. Hildebrand, doing business as Valley Elevator Company, Defendants.**

**Civ. No. 8313.**

United States District Court
N. D. California, N. D.

June 1, 1967.

Paul A. Renne, San Francisco, Cal., for plaintiff.

Joseph P. Van Den Berg, M. H. Pothoven, Sacramento, Cal., for defendants.

## MEMORANDUM FOR JUDGMENT

OLIVER J. CARTER, District Judge.

This case presents a question concerning the scope of the doctrine of implied indemnification between joint tortfeasors under California law. Briefly stated, the stipulated facts are these:

Plaintiff Great American Insurance Company, hereinafter "Great American", prior to October 1, 1956, insured Erickson Brothers, Inc., hereinafter "Erickson", and Emmanuel Schwaub, hereinafter "Schwaub", who were the owners of a warehouse building which was leased by them to H. C. Evans Van & Storage Company, hereinafter "Evans". This lease was an oral agreement giving Evans sole possession of the premises on a monthly basis and was made with the express understanding that the lessee, Evans, was to be responsible for the use, maintenance, and inspection of the freight elevator located in the warehouse.

On October 1, 1956, Evans employed defendant Valley Elevator Company, hereinafter "Valley", to place the elevator in working condition, and thereupon entered into a separate inspection service contract with Valley in connection with the use of the elevator, which provided in part that Valley "would assume no liability for injuries or damage to persons or property *except those directly due to [Valley's] acts or omissions.*" (Emphasis added.)

Almost one year later on September 7, 1957, Kasper Hardmeyer, an employee of Evans, was injured while using the freight elevator and died as a result of those injuries. His heirs brought a wrongful death action in the Superior Court of the State of California in and for the County of Sacramento against the owners of the warehouse, the lessee, and Valley among others, alleging that the death was due to the negligent operation, maintenance, and control of the elevator. A jury verdict for the amount of $112,500 plus $918.03 costs was returned against the defendants.

Great American, acting on behalf of Erickson and Schwaub, paid $40,000 to the heirs of the deceased in return for a partial satisfaction of judgment, and a full release and satisfaction of judgment against its insureds, and took an assignment and subrogation from them of all their rights for indemnification.

Next, Great American, as assignee and subrogee of Erickson and Schwaub, instituted this present action against Evans and Valley seeking indemnification for the $40,000 it had paid to the heirs of the deceased. The reason that Valley is the sole defendant in this action is that subsequent to the inception of the action plaintiff, Great American, executed a release of its claims against Evans and entered into an "Assignment and Covenant Not to Execute" in which Great American agreed not to look to any personal assets of Evans in satisfaction of said settlement in return for an assignment by Evans of any rights which it might have against any insurance company insuring Evans. To this date the plaintiff has received no payment under the terms of this release and assignment.

The central question which is before this Court is whether the plaintiff, Great American, as assignee and subrogee of its insureds, is entitled to indemnification from defendant Valley for the amount it has paid on the judgment to the heirs of Kasper Hardmeyer, the deceased, in the absence of an agreement between these parties providing for a right of indemnification. Specifically

we are concerned with the problem of whether indemnity should be implied from the particular factual context of this case which admits of no explicit contractual relationship between plaintiff's insureds and the defendant.

Certainly there is no dispute that the right to implied indemnity is now well established under California law. Cahill Brothers, Inc. v. Clementina Co., 208 Cal.App.2d 367, 375, 25 Cal.Rptr. 301 (1962). Both parties concede in their arguments that under the stipulated facts the plaintiff's insureds and defendant were joint tortfeasors, but they disagree as to whether or not the facts of this case come within the exception to the general rule of non-contribution which allows a right to indemnity as between joint tortfeasors.

In resolving this dispute one must first look to the stipulations which form the factual basis of this suit. They provide in part that in the wrongful death action the liability of plaintiff's insureds "was predicated solely on their non-delegable duties as owners of the premises and was not predicated on any affirmative acts taken by them" and that the liability of defendant, Valley, in that suit "was predicated on a finding of negligence in the performance of their contract with Evans Van & Storage Company and such negligence was a proximate cause of the death of Kasper Hardmeyer."

Whether these findings by the jury in the wrongful death action, when considered along with the nature of the relationship between the plaintiff's insureds and the defendant, place the parties within the exception to the non-contribution rule depends upon an understanding of the fundamental difference between contribution and indemnity. The right of contribution, where it exists, presupposes a common liability which is shared by the joint tortfeasors on a pro-rata basis. The right of indemnity, on the other hand, because of some special relationship existing between two tortfeasors shifts the entire loss upon the real wrongdoer. See Alisal Sanitary Dist. v. Kennedy, 180 Cal.App. 2d 69, 75, 4 Cal.Rptr. 379 (1960).

California has recognized two distinct lines of cases in which this special relationship exists. The first is where there is a contractual relationship between the parties which by implication gives rise to a right of indemnity. See Cahill Brothers, Inc. v. Clementina Co., supra; Alisal Sanitary Dist. v. Kennedy, supra; San Francisco Unified School Dist. v. California Bldg. etc. Co., 162 Cal.App.2d 434, 328 P.2d 785 (1958). The second concerns the area of non-contractual indemnity where the real wrongdoer's negligent conduct has been imputed to or constructively fastened upon the one who seeks indemnity. See City and County of San Francisco v. Ho Sing, 51 Cal.2d 127, 330 P.2d 802 (1958); De La Forest v. Yandle, 171 Cal.App.2d 59, 340 P.2d 52 (1959); Herrero v. Atkinson, 227 Cal.App.2d 69, 38 Cal.Rptr. 490, 8 A.L.R.3d 629 (1964). This Court believes that plaintiff is entitled to indemnification under either line of cases.

I. Implied right of indemnification where a contractual relationship exists.

The right of implied indemnity in contractual cases is based upon a breach of contract by the person against whom indemnity is sought. In the United States Supreme Court cases of Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), it was held that a shipowner could claim indemnity against a stevedoring company whose employee had recovered a judgment against the shipowner for injuries sustained in the course of his employment connected with the unloading of a vessel. These cases held that notwithstanding the absence of an express agreement of indemnity, the stevedoring company could be held liable for reimbursement to the shipowner

for the amount of the judgment against the latter where the injuries to the longshoremen resulted from the unsafe stowage of cargo in *Ryan* and an unsafe winch shelter erected by the stevedoring company in *Weyerhaeuser*. Liability was there predicated upon breach of the stevedoring contract, the rationale being that such contract necessarily implied an obligation to perform the stevedoring services contracted for with reasonable safety, and to be responsible for foreseeable damages resulting to the shipowner from the contractor's wrongful performance and not flowing from the shipowner's negligence.

The *San Francisco Unified School District* case relied upon the reasoning of *Ryan* and *Weyerhaeuser* and held that a prima facie case for indemnity had been made by the school district plaintiff against the defendant maintenance company for damages which the district was compelled to pay an employee of the maintenance company who had been injured while washing the windows of a high school. There the company contracted and agreed to wash the windows from the inside from stepladders, but failed to furnish such ladders to its employees. The court held that the contract was breached, and that the damages flowing to the district from such breach were subject to indemnification under a warranty or agreement to indemnify necessarily implied from the contract. Subsequent cases have followed the same reasoning. See Cahill Brothers, Inc. v. Clementina Co., supra and Alisal Sanitary Dist. v. Kennedy, supra.

In this action before us there is no contract between plaintiff's insureds and defendant Valley. This is not the case of Evans suing Valley for breach of contract, nor is it one in which the plaintiff has become a subrogee of Evans' rights against Valley. Therefore we must ask the question whether the fact that the plaintiff's insureds were not contracting parties with the defendant should be the distinction upon which their right to indemnification turns.

The logic of this line of cases requires the existence of a contractual relationship in some form in order for the aggrieved party to imply the warranty or agreement to indemnify which has been breached.

In this case this requirement is satisfactorily met by recognizing that the plaintiff's insureds are third party beneficiaries of the contract between Valley and Evans and that the implied warranties which would necessarily run to Evans inure to the benefit of the owners of the warehouse as well. The contract between Evans and Valley was for the maintenance of the elevator located on the owners' property. Its benefits were to run to those persons who would be held responsible for the safe operation of the specific elevator which Valley agreed to inspect. If the owners are to be held liable as a matter of law for the safe operation of this elevator, and it was Valley's contractual duty to maintain the elevator in a safe condition, then the owners were third party beneficiaries of Valley's services.

This reasoning was suggested by the United States Supreme Court in Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). That case held that there need not be privity of contract to support indemnification on behalf of a shipowner against a stevedoring company under contract with a third party. The Court stated at page 428, 79 S.Ct. at page 448:

"We think this case is governed by the principle announced in the *Ryan* case. The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries. Restatement, Law of Contracts, § 133."

The fact that the *Crumady* case was an *in rem* proceeding does not detract from

its authority in an *in personam* proceeding because the Supreme Court has also held that there is no difference in principle, so far as the stevedore's duty to indemnify the shipowner is concerned, whether the longshoreman's original claim was asserted in an *in rem* or an *in personam* proceeding. The owner, no less than the ship, is the beneficiary of the stevedore's warranty. Waterman S.S. Co. v. Dugan & McNamara, 364 U.S. 421, 424, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

■ While there appears to be no California cases applying the doctrine of implied indemnity in favor of third party beneficiaries, it is the view of this Court that the California courts will have no difficulty in so doing in a proper case, particularly in light of the prior history of the adoption of the principles of *Ryan* and *Weyerhaeuser* in the San Francisco Unified School District case and others following it.

■ There is an additional requirement that must be satisfied in order for an implied right to indemnification to be found in a contractual relationship situation. It further must be established that plaintiff's insureds' own negligent conduct was not sufficient to preclude recovery from the defendant. The role of their conduct in this regard was discussed at some length in Cahill Bros. Inc. v. Clementina Co., supra, 208 Cal.App.2d, at 381–382, 25 Cal.Rptr. at 309. There the court said:

"The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law. (Citations) The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity. In other words, the person seeking indemnity cannot recover if his negligence is active or affirmative as distinguished from negligence which is passive. The courts of this state now recognize the distinction between active and passive negligence in holding that in the absence of express agreement for such indemnification the indemnitee may not recover from the indemnitor where he has been actively or affirmatively negligent. (Citations)."

■ Looking, therefore, to the facts of this particular case the Court finds that the negligence of plaintiff's insureds was passive and not affirmative. This finding is supported by the stipulated fact which expressly stated that the owners' liability was based on a breach of a non-delegable duty and not on any affirmative act on their part. A reading of this stipulation in light of the almost directly analogous factual situation which is found in Otis Elevator Co. v. Maryland Casualty Co., 95 Colo. 99, 33 P.2d 974 (1934), (cited with approval in San Francisco Unified School District v. Cal. Bldg. etc. Co., supra, 162 Cal.App.2d at 445, 328 P.2d 785) is most persuasive for the proposition that the owners' negligence will not defeat their right to indemnification. In that case, the Colorado court held that the building owner was entitled to indemnification against the defendant who had been employed to inspect and repair the building's elevator and who performed this contract negligently. The court held there that although the building owner owed a duty to the public to maintain a reasonably safe elevator, the owner had a right to recover from the elevator company because its negligence was the primary cause of the accident.

Therefore, under these stipulated facts and the case law which supports an implied right of indemnification where a contractual relationship exists, this Court holds that plaintiff's insureds, as third-party beneficiaries to the Evans-

Valley contract, are entitled to indemnification from the party whose active negligence resulted in their subsequent liability to the injured party.

II. Equitable considerations supporting an implied right of indemnification in the absence of a contractual relationship.

 A second and independent basis for finding indemnification exists even in the absence of a contractual relationship. The theory behind indemnification is that everyone should be responsible for the consequences of his own wrong, and if others, by reason of a lesser kind of liability, have been compelled to pay damages they may then recover from the real wrongdoer in indemnity. See Herrero v. Atkinson, supra, 227 Cal.App.2d at 74, 38 Cal.Rptr. 490. In order to fulfill this purpose, California law has recognized that there are numerous situations where, even in the absence of a contract, equity still compels indemnification.

In those situations where no contract exists, the courts have relied upon a distinction between primary and secondary liability articulated in Alisal Sanitary District, supra, 180 Cal.App.2d, at 75, 4 Cal.Rptr. 379 (quoting with approval Builders Supply Co. v. McCabe, 366 Pa. 332, 325–328, 77 A.2d 368, 370, 24 A.L.R.2d 319 (1951). There the court stated:

" 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence * * *. It depends on a difference in the *character*

or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. * * * Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' "

 These terms are readily applicable to the facts in this action. The liability of plaintiff's insureds, as owners of the warehouse, is secondary since it arises not from an active fault, but from the legal obligation that the owners have to provide a safe premises. This obligation is similar to that of a municipality's non-delegable duty to insure a safe passage for pedestrians along sidewalks. In these circumstances, the municipality has been indemnified by the negligent adjacent landowner since the municipality was only "secondarily" liable. City and County of San Francisco v. Ho Sing, supra.

Similarly, an owner of a motor vehicle has a non-delegable duty to maintain his vehicle in a safe condition. When, as a result of the vehicle's negligent repair it causes injury, then the owner must be indemnified for any loss he may suffer even though no contractual relationship existed between the owner and the repairman. De La Forest v. Yandle, supra.

 One of the lessons of these cases is this: If the liability of the potential indemnitee was based solely upon a non-delegable duty arising out of his particular relationship to the injured party and not from any active participation

158

in the negligent or other actionable conduct which caused the injury, then he is entitled to indemnification from the party, or parties, actively participating in the negligence or other actionable conduct.

For this reason plaintiff, Great American, can recover from Valley. Its insureds were not actively negligent; their liability was imposed by law. To make them suffer the loss caused by Valley's conduct would be inequitable, and it is equitable considerations which support indemnification in non-contractual situations. Cahill Bros. Inc. v. Clementina Co., supra, 208 Cal.App. at 376, 25 Cal.Rptr. 301.

Finally, it should be noted that Valley's claim that California Code of Civil Procedure Section 877(a) precludes indemnification because of the existence of the release between Evans and Great American is not well-taken. That section is specifically not applicable in those situations where the right of indemnity already exists under present law. See California Code of Civil Procedure Section 875(f).

Accordingly, it is the Court's ruling that under either theory, contractual or non-contractual, plaintiff Great American has an implied right to indemnification from Valley in the amount of $40,000. This decision is conditioned upon the plaintiff recovering no more than this sum from the combined sources of the defendant, Evans, or its insurers. To hold otherwise and allow a double recovery would defeat the equitable considerations in favor of indemnification.

Judgment is awarded to the plaintiff and against the defendant, Valley Elevator Company, in the sum of $40,000, together with its costs of suit incurred herein. This memorandum will constitute the Findings of Fact and Conclusions of Law by the Court in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. Counsel for plaintiff is directed to prepare and present a Judgment in accordance herewith.