450 So.2d 536 (1984)
UNITED OF OMAHA LIFE INSURANCE COMPANY and Tower Mortgage Corp., Appellants,
v.
NOB HILL ASSOCIATES, Joel F. Bowie, Williams A. Joyner and DCA Land Corporation, Appellees.
Nos. 83-418, 83-468.
District Court of Appeal of Florida, Third District.
April 10, 1984.
Rehearing Denied June 8, 1984.
*538 Daniels & Hicks and Sam Daniels, Fowler, White, Burnett, Hurley, Banick & Strickroot, Rosenberg, Reisman & Glass and James Glass and Michele R. Benvenisty, Miami, for appellants.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Miami, for appellees.
Before BARKDULL, HUBBART and NESBITT, JJ.
PER CURIAM.
Nob Hill was a joint venture which decided to develop a shopping center. It sought a permanent loan through Tower, a mortgage brokerage institution. Tower obtained a commitment from United, an institutional lender, whereby United agreed to purchase a proposed loan to be made by Tower to Nob Hill. United charged Tower a commitment fee of $50,000. With this commitment from United, Tower agreed to loan Nob Hill a maximum of $2,500,000. Nob Hill provided a $50,000 letter of credit as a good faith deposit. Nob Hill then procured a construction loan from Southeast Bank and began construction.
As the time approached for closing on the construction loan, it became apparent to Nob Hill that it would require an extension of the permanent loan commitment. An extension was granted by all parties until February 28, 1980.
Thereafter, Nob Hill requested a further extension of six months from Tower. Tower sought the extension from United who agreed, but required as consideration an increase in the interest rate, a construction report indicating that construction problems had been corrected and an extension of the $50,000 letter of credit. Tower made this parallel offer to Nob Hill. Nob Hill expressed concern over the 30-day requirement for the correction of defects and requested that a "P.S." be inserted in the agreement allowing Nob Hill a reasonable time to solve these construction problems. This was allegedly verbally agreed to by United on February 5th and was made part of the agreement between Tower and Nob Hill. However, when Tower executed and returned United's parallel extension offer, it failed to include the "P.S." condition. United took the position that there had been some misunderstanding concerning the February 5th offer and therefore claimed that the commitment expired without extension on February 28, 1980.
Notwithstanding this dispute, United wrote letters to Tower on March 7th and March 27th in which it offered to extend the time for the construction problems to be remedied. The final letter stated that the time could be extended to May 23, 1980. On May 22, 1980, Tower wrote United that it had not received documents certifying that the corrections were made. On May 24, 1980, United wrote Tower stating that its commitment had expired and directed Tower to cash the letter of credit.
In November 1980, Nob Hill instituted suit against Tower for breach of contract and against United for tortious interference with a contract and tortious interference with a business relationship. Tower answered and asserted a cross-claim against United for indemnification. United cross-claimed against Tower for breach of contract to recover the $50,000. United's motions for judgment on the pleadings and summary judgment were denied and the case proceeded to trial. The jury found: (1) United was liable to Nob Hill for tortious interference in the amount of $1,750,000 compensatory and $750,000 punitive damages; (2) Tower was liable to Nob Hill for breach of contract in the amount of $1,800,000;[1] (3) Tower was entitled to indemnification from United in the amount of $1,750,000 (the difference was the $50,000 held by Tower); and (4) Tower was not liable to United for breach of contract.
United appeals the compensatory and punitive damages award in favor of Nob Hill *539 as well as the indemnity judgment in favor of Tower. Tower appeals the judgment in favor of Nob Hill for breach of contract.
First, United argues that it was a party to the contract between Nob Hill and Tower and therefore could not be found liable for tortious interference. Under Florida law, a cause of action for tortious interference does not exist against one who is himself a party to the contract allegedly interfered with. Ethyl Corp. v. Balter, 386 So.2d 1220 (Fla. 3d DCA 1980), pet. for review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). Tower's commitment letter to Nob Hill stated:
Subject to acceptance by United Benefit Life Insurance Company (ultimate investor) of the parallel commitment by them. We will so inform you of their acceptance.
In our view, this negates any argument by Nob Hill that the contracts were separate and distinct. Accordingly, the compensatory and punitive damage award in favor of Nob Hill against United for tortious interference must be reversed with directions to enter judgment for United on this claim.
We next examine United's claim that Tower was not entitled to indemnification. This must be considered in conjunction with Tower's claim that there was insufficient evidence to support a breach of contract on its part.
In essence, Tower argues that it was in the position of arranging a loan between United and Nob Hill and that its commitment to Nob Hill was entirely dependent on the commitment from United. We agree and find that Tower's liability to Nob Hill was solely derivative from an alleged breach of contract on the part of United. The law is well settled that a party may recover under an indemnity theory where its liability, if any, would be solely vicarious, constructive, derivative or technical and based upon the actual wrongdoing or breach of contract of the indemnitor. Houdaille Industries v. Edwards, 374 So.2d 490 (Fla. 1979); Olnick v. Robert Myers Painting, Inc., 384 So.2d 54 (Fla. 4th DCA 1980).
The question then is whether the evidence supports the jury's determination that United breached its contract. United argues that there was a dispute as to the terms of the extension and that no agreement was entered into. In the absence of an extension, United's position is that its offer expired on February 28, 1980. However, the record shows that United entered into an extension agreement with Tower, on February 22, 1980. The issue with respect to the breach of contract is created by the purported oral modification wherein United allegedly agreed that it would allow Nob Hill a reasonable time to prepare construction reports. We agree with United that there can be no oral modification of an agreement which was required to be in writing by the statute of frauds, Affordable Homes, Inc. v. Devil's Run, Ltd., 408 So.2d 679 (Fla. 1st DCA 1982); 11 Fla. Jur.2d Contracts § 160 (1979). However, this does not relieve United from liability. On the record before us, it is clear that United has waived its right to utilize the statute of frauds as a defense. In reliance upon United's oral agreement with Tower that it would allow Nob Hill a reasonable time to comply with the conditions precedent to the loan, Tower entered into a binding written contract with Nob Hill.
Because Tower has changed its position in reliance upon United's consent to the new time, United is estopped from claiming that it did not agree to a longer period of time for compliance. See Young v. Pottinger, 340 So.2d 518 (Fla. 2d DCA 1976); Affordable Homes, Inc. Whether or not it was a breach of that agreement for United to refuse to fund the loan in May of 1980 was a question for the jury. It is apparent from the jury verdict in favor of Tower on the indemnity claim that they found that United wrongfully declined to fund the loan. This finding is supported by competent substantial evidence and we therefore affirm.
*540 Finally, we consider whether the judgment against Tower for $1,800,000 (and thus the judgment against United for $1,750,000 on the indemnity claim) is excessive. The measure of damages for failure to make a loan is the added cost of a substitute loan over its term, reduced to present value. Financial Federal Savings and Loan Ass'n of Dade County v. Continental Enterprises, Inc., 338 So.2d 907 (Fla. 3d DCA 1976).
According to one of Nob Hill's own experts, the amount of damages using this standard was a maximum of $834,619. The second expert, upon whom Nob Hill places reliance, merely projected what the cost of a substituted loan would be, using a range of discount rates. Ultimately, however, these figures were not correlated to the actual rate which would apply and the jury was left to "select" whichever of the rates they chose. As such, we conclude that the jury verdict which apparently utilized these "projections" did not comport with the standard of damages. It is clear that $1,800,000 in damages for failure to fund a loan of $2,500,000 is excessive. Accordingly, we direct that Tower is entitled to a new trial on damages.
In conclusion, the compensatory and punitive damage award against United is reversed and the judgment against Tower is reversed for a new trial on damages only. United's liability to Tower is affirmed, but the award of damages must be reversed and remanded for entry of a judgment in accordance with the new trial on damages.
Affirmed in part, reversed in part and remanded.
NOTES
[1] The liability of the defendants to the plaintiff was determined to be joint and several to the extent of $1,750,000.