FAIRBANKS NORTH STAR
BOROUGH, Appellant,

v.

KANDIK CONSTRUCTION, INC. AND ASSOCIATES, Kandik Construction, Inc., and Roen Design Associates, Inc., Appellees.

No. S–2772.

Supreme Court of Alaska.

Dec. 27, 1991.

---

Ronald E. Noel, Joseph S. Slusser, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee Roen Design Associates.

R. Everett Harris, Kevin M. Morford, Jensen, Harris & Roth, Anchorage, and Mark Andrews, Asst. Borough Atty., Fairbanks, for appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION ON REHEARING

BURKE, Justice.

We rendered our decision in the predecessor to this appeal on March 2, 1990. *Fairbanks North Star Borough v. Kandik Construction, Inc.*, 795 P.2d 793 (Alaska 1990). Following the announcement of our decision, Roen Design Associates, one of the appellees, filed a petition for rehearing.[1] We now vacate part IV of our earlier opinion. We also remand for a new trial on the question of Roen's liability for indemnity to its cross-defendant in the case.

### I

Roen contracted to prepare plans for the roads of a subdivision for the Fairbanks North Star Borough. *Id.* at 796. The Borough awarded Kandik Construction Inc. & Associates the contract for construction of the roads. *Id.* After essentially completing the road work, Kandik sued both Roen and the Borough. *Id.* at 796 & n. 1.

Against the Borough, Kandik initially asserted three causes of action, all sounding in contract: breach of express warranty, breach of implied warranty, and breach of the covenant of good faith and fair dealing. *Id.* at 796 & n. 2. Kandik later amended its complaint to assert against the Borough a cause of action for "business destruction"

---

**1.** Alaska Rule of Appellate Procedure 506(b) requires filing of a petition for rehearing within 10 days of date of notice of an opinion in a case.

damages. *Id.* at 796, 801–03. The latter claim apparently sounded in tort.[2] *Id.* at 801–03. Kandik also asserted against Roen a tort claim for professional malpractice. *Id.* at 796.

In response, the Borough asserted claims against Kandik and a cross-claim against its co-defendant Roen. In its initial cross-claim, filed on July 18, 1985, the Borough purported to assert three claims against Roen: a claim of negligence, a claim of breach of contract, and a claim for indemnity. This pleading, however, was soon withdrawn. In a letter dated July 29, 1985, the Borough's attorney requested that the superior court clerk remove from the court file the "erroneously filed" initial cross-claim complaint, and on August 19, 1985, the Borough was permitted to file a new cross-claim against Roen. The new complaint contained only one rather ambiguous claim for either express contractual or, in the alternative, for "common-law" indemnity.[3]

Before trial, Kandik's tort claim against Roen was settled. *Id.* at 796. Roen next obtained summary judgment in its favor on the Borough's cross-claim for indemnity. *Id.* at 796 n. 3. The Borough appealed, and in *Fairbanks North Star Borough v. Roen Design Assocs.,* 727 P.2d 758, 760 (Alaska 1986), we agreed with the superior court that the express indemnity provision in the Borough–Roen contract did not cover the sort of economic damages at issue in the dispute. We also concluded, however, that the Borough had asserted a claim for "common-law indemnity" against Roen, which the superior court had not addressed. *Id.* We thus reversed the court's grant of summary judgment and remanded the case for trial on the common-law indemnity claim. *Id.* at 761–62.

The Borough's common-law indemnity cross-claim against Roen was one issue in a complicated jury trial that mainly featured Kandik's claims against the Borough. Ultimately, the jury awarded $402,440 to Kandik for the Borough's breach of the construction contract. *Kandik,* 795 P.2d at 797 n. 4. The jury also awarded $165,000 for business destruction losses. *Id.* And, finally, the jury found that Roen was not required to indemnify the Borough under principles of common-law indemnity. *Id.* at 797.

The Borough appealed and, in the decision now on rehearing, we reversed and remanded for a new trial on several issues.[4] *Id.* at 804. As to the jury verdict denying indemnity to the Borough, we found the claim redundant in light of what we perceived to be the Borough's alternative cross-claims against Roen for tort and breach of contract. *Id.* We thus declined to address the validity of the jury's indemnity verdict. *Id.* We also concluded that the trial court had not properly instructed the jury on all three of the claims we perceived the Borough to have tried against Roen. *Id.* Consequently, we ordered a new trial for the Borough "on the question whether Roen is liable to the Borough under a theory of tort or contract." *Id.*

According to Roen, we erred by not directly addressing the jury's indemnity verdict and by ordering a new trial on Roen's tort and contract liability to the Borough. We granted Roen's petition for rehearing to determine whether we did so err.

## II

We did not address the indemnity verdict in this case specifically, because we found the indemnity claim redundant in light of

---

**2.** In *Kandik,* we ordered the trial court upon remand to clarify its instruction to the jury on the business destruction claim. *Kandik,* 795 P.2d at 802–03.

**3.** The new cross-claim did not amend the initial claim. Rather, the new cross-claim displaced the initial claim. The initial, inoperative cross-claim, however, remained in the case file and became part of the record on appeal, while the letter that withdrew the initial claim did *not*

enter the case file, nor did it become part of the record on appeal.

**4.** In addition to the indemnity-related remand, this court held that the trial court had improperly instructed the jury on the measurement of contract damages. *Kandik,* 795 P.2d at 799–800. This court also held that the trial court had failed to explain to the jury the nature of the "business destruction" theory of liability. *Id.* at 801–03.

the tort and contract claims we believed were brought by the Borough against Roen. Consequently, the threshold question is whether any tort and contract claims by the Borough against Roen properly should have gone to the jury. If so, then our original decision may stand. If not, then we must consider the jury's original verdict on the Borough's indemnity claim against Roen.

■ Roen first argues that a new trial on tort and contract claims would be improper because the Borough never pled cross-claims against it for tort or breach of contract. Rather, the only claim that the Borough pled against Roen was an indemnity claim. After close review of the record, we agree that the Borough did not plead actions in tort or contract against Roen. The only effective complaint the Borough filed contained the cross-claim against Roen for indemnity. We also note that the Borough does not actually contend that it ever effectively pled any action against Roen except one for indemnity.

The Borough, however, argues that we need not alter our original decision on its entitlement to a new trial on tort and contract claims against Roen because such claims actually were tried in the court below. The Borough asserts two partially overlapping rationales for reaching such a conclusion. The Borough offers the theoretical argument that a trial on "common-law indemnity" in this case perforce included a trial on underlying claims of Roen's negligence and breach of contract. The Borough also offers the practical argument that it presented evidence of Roen's negligence and breach of contract to the jury, that Roen consented to trial on those issues, and that we now may treat the Borough's pleadings as amended to conform to the evidence presented at trial.

The Borough's theoretical argument ignores the very nature of the action for implied (or "common-law") indemnity. Under modern rules of pleading, a defendant may—and often does—join an action for implied indemnity with the action that threatens to inflict the very loss for which the defendant seeks indemnity. *See, e.g.,* Alaska R.Civ.P. 13 & 14. Traditionally, however, courts did *not* permit such joinder of claims and parties, because implied indemnity is a distinct cause of action,[5] which technically does not accrue until the indemnitee actually pays the money judgment for which it seeks indemnity. *Larson Mach., Inc. v. Wallace,* 268 Ark. 192, 600 S.W.2d 1, 13 (1980); *Rieger v. Frankstram Realties, Inc.,* 68 N.Y.S.2d 243, 245–46 (N.Y.Sup.1946). Modern courts relax the requirement of actual payment of judgment and permit joinder of implied indemnity claims with the actions that may give

---

5. The specific type of implied indemnity at issue in this case is implied *contractual* indemnity: the Borough's right to indemnity rises, if at all, as a result of its contractual relationship with Roen. Some courts have found that implied contractual indemnity rises under principles of restitution or quasi-contract. *E.g., Owings v. Rosé,* 262 Or. 247, 497 P.2d 1183, 1190 (1972). Other courts hold that the implied promise must inhere in the contract between the parties, and that, therefore, implied contractual indemnity actually constitutes an action for breach of contract. *E.g., Great American Insurance Co. v. Evans,* 269 F.Supp. 151, 154–56 (N.D.Cal.1967) (citing an influential line of cases that began with *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956)). Other courts find the source of implied contractual indemnity in principles of equity. *E.g., Zontelli & Sons v. City of Nashwauk,* 373 N.W.2d 744, 755 (Minn.1985). Still other courts, faced with the question of whether indemnity actions require trial by jury, have found implied contractual indemnity a peculiar

hybrid of legal and equitable principles. *See, e.g., Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 465 F.Supp. 790, 794 (S.D.N.Y. 1978) (indemnity is essentially equitable question but right to indemnity is a jury question); *Midwest Fertilizer Co. v. Ag–Chem Equip. Co.,* 510 N.E.2d 232, 233–35 (Ind.App.1987) (indemnity may be equitable in nature for other purposes and yet not for determining right to jury trial). We do not find it necessary to examine these distinctions in detail in the present case. First, the availability of indemnity as a result of the parties' contractual relationship is not in dispute. Rather, the main legal dispute here is over what effect the Borough's own actions or inactions should have on its right to recover from Roen in indemnity. Second, the subsidiary legal dispute here over whether trial of an indemnity claim per force includes full trial of other claims in tort or contract would reach the same resolution no matter which of the various theories we deemed the source of an action for implied contractual indemnity.

rise to a right of indemnity, but those courts clearly treat the indemnity claim as *sui generis. E.g., Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, 294 (1972); *Rieger,* 68 N.Y.S.2d at 246; *see also Holzhauser v. Container Corp. of America,* 93 F.R.D. 837, 838–39 (W.D.Ark.1982) (offering reconciliation of traditional accrual of action rule for indemnity with modern rule permitting impleader). Modern rules of pleading thus aim to reduce the multiplicity of actions, but not by conflating causes of action. The Borough's indemnity claim was not some legal marsupial whose hidden tort and contract offspring suddenly came of age during trial. Rather, it was a discrete, independent claim in its own right. As a result, only if the Borough has shown that it tried equally discrete tort and contract claims entirely independent of the indemnity claim would it be entitled to a new trial on such claims. The Borough has not made such a showing.

Admittedly, the issue of Roen's professional negligence was an element of the Borough's implied indemnity claim. In particular, the indemnity claim—both as formulated in the Borough's own proposed but rejected jury instruction and as formulated in the instruction actually given to the jury—required a finding that Roen had failed to exercise reasonable care in its preparation of the plans. As a result, the first element of the indemnity action and the first element of a negligence action are identical. The subsequent elements of the two actions, however, do not coincide.

The Borough's indemnity action was one for *implied contractual indemnity,* which rests on the principle that a contract to perform a service contains a three-part implied promise: 1) the indemnitor will perform the service in a proper manner, or 2) the indemnitor will discharge foreseeable damages resulting from improper performance, unless 3) the indemnitee's own participation in causing the damages precludes recovery. *See, e.g., Great Western Furniture Co. v. Porter Corp.,* 238 Cal.App.2d 502, 48 Cal.Rptr. 76, 86 (1965). Thus, if

Roen negligently prepared plans, and those plans themselves caused the Borough to incur liability to Kandik, then the Borough rightly sought indemnity from Roen. *Accord Zontelli & Sons v. City of Nashwauk,* 373 N.W.2d 744, 755 (Minn.1985); *Miller v. Melaney,* 172 Mont. 74, 560 P.2d 902, 905 (1977). Such indemnification recovery, however, if obtained, would flow from a completely different source than would the damages recoverable in a negligence action against Roen, because the focus of causation is completely different for each of the two actions.

In an implied contractual indemnity action by the Borough against Roen, the causation element of the action requires the jury to determine whether Roen's negligence caused harm to Kandik.[6] *E.g., Zontelli,* 373 N.W.2d at 755. In a professional negligence action by the Borough against Roen, the causation element of the action requires the jury to determine whether Roen's negligence caused harm to the Borough. *See Thomas v. Cleary,* 768 P.2d 1090, 1092 (Alaska 1989); *see also* Restatement (Second) of Torts §§ 281(a) & 430 (1965); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on The Law of Torts* § 30, at 164–65 (5th ed. 1984). Facts constituting the two types of legal cause are not necessarily identical; neither are the damages that would flow from the two types of legal cause. The Borough had the burden of proving every element of the negligence cause of action that it now argues actually was tried before the jury. *See* Restatement (Second) of Torts §§ 328A & 433B (1965). The Borough, however, does not even attempt to show that it ever litigated the elements of causation and damages for a negligence action against Roen. Additionally, we find no hint in the record that the Borough litigated those issues.

In sum, the Borough neither pled nor tried a negligence cause of action against Roen. We thus vacate our original decision as to the Borough's entitlement upon

---

6. The Borough's own proposed jury instruction on its claims against Roen required the jury to determine that Roen's negligence caused Kandik's damages. *See Kandik,* 795 P.2d at 803.

remand to a new trial on a negligence claim against Roen.

■ The Borough's argument that it somehow, in the course of trying its indemnity claim, tried a breach of contract action independent of the indemnity claim similarly fails. Prior to trial the Borough attempted to amend its cross-claim against Roen to include a claim of breach of "express and implied warranties of specifications/design adequacy." The superior court denied the motion to amend the cross-claim, holding that Alaska law recognizes no warranty for professional services. The Borough has not appealed that denial, and the Borough has not offered any other basis for finding a breach of any contractual promise other than the implied promise for indemnity.[7] As explained, that promise for indemnity can give rise *only* to a claim for indemnity. *Accord Bay Development Ltd. v. Superior Court,* 50 Cal.3d 1012, 269 Cal.Rptr. 720, 733 n. 13, 791 P.2d 290, 303 n. 13 (1990); *see also Dole,* 331 N.Y.S.2d at 390–91, 282 N.E.2d at 294.

The Borough neither pled a discreet action in contract nor litigated issues of breach of contract independent of those inherent in its indemnity claim. We thus vacate our original decision as to the Borough's entitlement upon remand to a new trial on a nonindemnity breach of contract claim against Roen.

### III

In our original decision, we did not reach the merits of the Borough's appeal of the verdict that denied it recovery against Roen. *Kandik,* 795 P.2d at 803–04. Because we now have vacated our original decision on the Borough's cross-claim against Roen, we turn to the merits of the original appeal of the jury's indemnity verdict.

### A

In the present case, after trial of all issues, the court instructed the jury on the law of indemnity, and the jury returned a special verdict holding that the Borough was not entitled to recover from Roen, under an indemnity theory, any of the damages the Borough owed to Kandik. The question before us here is whether the trial court's instruction regarding indemnity was a proper statement of the law, or, if not, whether the improper instruction prejudiced the Borough's substantial rights. Alaska R.Civ.P. 61; *Grimes v. Haslett,* 641 P.2d 813, 818 (Alaska 1982).

We reach the question of error in the instructions on indemnity in this case despite the possibility that the Borough did not properly object to the faults in the instructions. *See* Alaska R.Civ.P. 51(a). As we explained in *City of Nome v. Ailak,* 570 P.2d 162, 171 (Alaska 1977), "[j]ury instructions which set forth an entirely erroneous standard of liability" may be considered to create "a high likelihood that the jury followed an erroneous theory resulting in a miscarriage of justice." We have concluded that the central instruction on indemnity in this case did set forth an entirely erroneous standard of liability for implied contractual indemnity and that the error in the instruction almost certainly resulted in a miscarriage of justice. Such a miscarriage of justice warrants review of a plainly erroneous jury instruction, even if the party asserting error has not properly objected to the error in the trial court. *Id.*

### B

■ In the broadest sense, the obligation of indemnity is the obligation resting on one party to make good a loss or damage another has incurred. *Bay Development,* 269 Cal.Rptr. at 729, 791 P.2d at

---

**7.** The Borough's own citations to the record further undercut its argument that Roen consented to trial of breach of contract issues independent of the indemnity claim. For example, the Borough's counsel began his opening statement to the jury with a general assertion that the Borough intended to prove that "Roen breached its contract with the Borough." Roen objected to that argument, and the court then carefully instructed the jury on the particular type of breach of contract inherent in the indemnity claim. As the Borough itself points out, from that moment, on its counsel kept all argument on the question of Roen's negligence and breach of promise confined to the theoretical limits of the indemnity claim.

299. A traditional rule of indemnity, however, is that an indemnitee is not entitled to recover if the indemnitee has actively participated in the wrongful acts that caused the damage. *Great Western Furniture*, 48 Cal.Rptr. at 86; *Chirco Constr. Co. v. Stewart Title & Trust of Tucson*, 129 Ariz. 187, 629 P.2d 1023, 1024–25 (App.1981); *Coca–Cola Bottling Co.–Goshen v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind.App.1983). A few jurisdictions have abrogated the traditional rule in favor of a partial or comparative fault system of indemnity.[8] *See, e.g., Bay Development*, 269 Cal.Rptr. at 730 n. 10, 791 P.2d at 300 n. 10 (California); *Dole*, 331 N.Y.S.2d at 387–88, 282 N.E.2d at 292 (New York). Alaska has not. In Alaska, a version of the traditional rule still applies to indemnity actions. In particular, we repeatedly have held that an indemnitee jointly liable in tort with the indemnitor may recover implied *non*contractual indemnity only if the indemnitee is not in any degree also jointly at fault.[9] *Koehring Mfg. v. Earthmovers of Fairbanks*, 763 P.2d 499, 503–04 (Alaska 1988); *D.G. Shelter Prod-*

*ucts v. Moduline Industries*, 684 P.2d 839, 841–42 (Alaska 1984); *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619, 621–26 (Alaska 1983). We previously have not had occasion to state that a version of this rule also applies to actions for implied *contractual* indemnity. It does. Consequently, the rules of implied contractual indemnity, as applicable in this case, may be summarized as follows: The Borough may recover from Roen in indemnity insofar as Roen's negligence caused the Borough to pay breach of contract damages[10] or tort damages[11] to Kandik, *unless* the Borough also was itself at fault in causing the particular damages for which it sought to be indemnified.[12]

A jury instruction enunciating these principles would accurately explain the way in which an indemnitee's own fault may affect the availability of recovery in an action for implied contractual indemnity. The central instruction that the trial court gave to the jury on the law of indemnity[13] not only

---

**8.** At least one jurisdiction did not modify its law of indemnity to accommodate principles of comparative negligence or contribution, but rather abolished implied noncontractual indemnity as between co-tortfeasors as no longer a viable doctrine in light of the availability of other cost-shifting doctrines. *See Allison v. Shell Oil Co.*, 113 Ill.2d 26, 99 Ill.Dec. 115, 120, 495 N.E.2d 496, 501 (1986). The Illinois courts, however, have continued to recognize implied contractual indemnity. *E.g., Carrillo v. Jam Products, Ltd.*, 173 Ill.App.3d 693, 123 Ill.Dec. 326, 329, 527 N.E.2d 964, 967 (1988).

**9.** Common settings in which tortfeasors are jointly liable but not jointly at fault are where one is only liable by operation of vicarious or strict liability. *E.g., D.G. Shelter Products v. Moduline Industries*, 684 P.2d 839, 841 (Alaska 1984) ("an innocent party in the chain of commerce, having only passed on an already defective product, ... would be entitled to indemnity"); *Austin v. Fulton Insurance Co.*, 498 P.2d 702, 705 (Alaska 1972).

**10.** *Accord Zontelli*, 373 N.W.2d at 755; *Chirco Constr.*, 629 P.2d at 1025; *Considine Co. v. Shadle, Hunt & Hagar*, 187 Cal.App.3d 760, 232 Cal.Rptr. 250, 256 (1986); *Carrillo*, 123 Ill.Dec. at 329, 527 N.E.2d at 967.

**11.** *Accord San Francisco Unified School Dist. v. California Bldg. Co.*, 162 Cal.App.2d 434, 328 P.2d 785, 789–94 (1958); *Owings v. Rosé*, 262 Or. 247, 497 P.2d 1183, 1185–88 (1972).

**12.** *Accord Great Western Furniture*, 48 Cal.Rptr. at 86; *Chirco Constr.*, 629 P.2d at 1025; *United of Omaha Life Ins. Co. v. Nob Hill Assocs.*, 450 So.2d 536, 539 (Fla.App.1984); *see also Coca–Cola Bottling Co.–Goshen*, 455 N.E.2d at 373.

**13.** Instruction No. 31 stated:

If by following the preceding instructions, you have determined that the Borough is liable to Kandik for damages, you must determine whether Roen Design is liable to the Borough. The Borough claims that Roen design is liable to the Borough for any damages which you have found that the Borough must pay to Kandik.

In order to find that the Borough is entitled to recover from Roen Design the damages which the Borough must pay to Kandik, you must decide that it is more likely than not that all of the following three things are true:

1) That Roen Design was professionally negligent in any failure by Roen to communicate to the Borough and Kandik its use of approximations in development of its cross sections and mass diagrams; or any failure by Roen to compute volumes of waste disposal area; or any failure by Roen to communicate to the Borough engineer its position as to the use of additional disposal area; and

2) That all of the damages suffered by Kandik were legally caused by Roen's professional negligence; and

3) That for all of the damages suffered by Kandik which the Borough seeks to recover

failed to enunciate these principles, it actually misstated them in a way that inevitably prejudiced the Borough. First, the instruction repeatedly told the jury that the Borough sought indemnity from Roen for *all* of the damages that the Borough must pay to Kandik. Second, the instruction told the jury that if *any part* of Kandik's damage was caused by the Borough's negligence or breach of its contract with Kandik, then the Borough could not recover indemnity from Roen.

One must recall that Kandik asserted *four* claims against the Borough. The court in effect instructed the jury that if it found the Borough liable for any of the four claims, then the Borough could not recover in indemnity the damages that flowed from any of the other claims. This instruction was a deleterious misinterpretation of the requirement that an indemnitee be fault free.[14] As explained, if the jury could determine that Roen's negligence alone caused the Borough to incur liability for damages on any individual claim that Kandik brought against it, then the jury could have awarded the Borough indemnity for that amount. The Borough's tort or contract liability to Kandik for damages that flowed from other claims, if plainly divisible, would not be relevant to an equally divisible and meritorious indemnity claim.

We VACATE part IV of our opinion in *Fairbanks North Star Borough v. Kandik Construction, Inc.*, 795 P.2d 793 (Alaska 1990) and REMAND for a new trial, consistent with this opinion, on the question whether Roen is liable to the Borough under a theory of implied contractual indemnity.

MATTHEWS, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

A rule of comparative fault should govern this case under which the Borough may obtain partial indemnity from Roen if Roen's negligence and the Borough's fault jointly caused the Borough to suffer liability to Kandik. In such case the jury should apportion liability between the Borough and Roen according to their relative degrees of fault.

In *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975), we rejected the rule of contributory negligence in favor of comparative negligence. Contributory negligence, like the rule adopted by the majority today, is an all or nothing rule. Any fault on the part of the claimant will bar any recovery against another party even though the claimant's fault might be relatively slight, while the fault of the other party is great. What we said in *Kaatz* about contributory negligence seems equally applicable to the all or nothing rule adopted by the majority in the present opinion:

> [T]he doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault.... The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness.

*Id.* at 1048 (quoting *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 862–63, 532 P.2d 1226, 1230–31 (1975)).

The hardship of the doctrine ... is readily apparent. It places upon one par-

from Roen, it is more likely than not that the following two things are both true:

    a) that the damage to Kandik was not legally caused by an affirmative act of negligence by the Borough; and

    b) that the damage to Kandik was not legally caused by the Borough's failure to perform its duties in connection with the contract between the Borough and Kandik.

**14.** We note that Kandik's claim that the Borough breached the covenant of good faith and fair dealing necessarily implied that the Borough participated in causing any harm by that

breach. In other words, breach by bad faith or unfair dealing always implicates the contracting party's actions or inactions, which may be unfair or in bad faith because they are dishonest, evasive, interfering, willfully insufficient, or otherwise wrongful. Restatement (Second) of Contracts § 205, comments a-e (1981). It would not be possible for a party to breach the covenant of good faith and fair dealing and also be fault free for purposes of an indemnity action on the specific damages that flow from that breach.

**640**

ty the entire burden of a loss for which two are, by hypothesis, responsible. The negligence of the defendant has played no less a part in causing the damage; the plaintiff's deviation from the community standard of conduct may even be relatively slight, and the defendant's more extreme; . . . .

*Id.* at 1048 (quoting W. Prosser, *Handbook on the Law of Torts* § 433 (4th ed. 1971)).

The rule that any degree of fault bars all recovery is an anachronism. Comparative negligence has been in effect in this state since the *Kaatz* decision. No special problems have been encountered. In the context of joint tortfeasors, the all or nothing common law rule which forbade one joint tortfeasor from obtaining contribution from another was abolished by statute in 1970 with the enactment of the Alaska Uniform Contribution Among Joint Tortfeasors Act. AS 09.16.010–.060 (repealed eff. 3/5/89). Although under this act joint tortfeasors share equally in the common liability rather than according to the comparative fault of each, this system was nonetheless clearly preferable to the all or nothing common law rule.[1] Under current law, joint tortfeasors are liable for that percentage of total damages which accords to the percentage of fault of each. AS 09.17.080(d). The rule that partial fault of a party precludes all loss shifting has thus been clearly rejected by this court and by the Alaska Legislature in the context of tort law. To announce such a rule in the closely related area of implied contracts is to ignore the legal developments of the last two decades.

We have recognized that in certain cases, especially those involving the performance of professional services, identical claims may reasonably be said to arise both in tort

and in implied contract. *Lee Houston & Associates, Ltd. v. Racine*, 806 P.2d 848, 853–54 (Alaska 1991). " "This court should avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities.' " *Id.* at 853 (quoting *Higa v. Mirikitani*, 55 Haw. 167, 517 P.2d 1, 4–5 (1973)). It is therefore appropriate, so far as is possible, to apply rules of law to implied contractual indemnity claims which are similar to those applied to indemnity claims sounding in tort.

If one accepts the conclusion that implied contract claims seeking to shift all or part of a loss to another wrongdoer should be treated similarly to tort claims having the same objective, it is immediately apparent that loss shifting proportional to fault should be allowed under current law because currently a tortfeasor may not suffer a loss which is disproportionate to its fault. AS 09.17.080(d). In my view, loss shifting proportional to fault should also apply to cases, such as the present one, which arose when the Alaska Uniform Contribution Among Joint Tortfeasors Act was in effect, because, as noted, loss shifting proportional to fault is closer to the statutory contribution remedy than no loss shifting at all.

The rule that there can be no partial non-statutory indemnity between concurrently negligent tortfeasors was adopted by this court in *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 661 P.2d 619, 626 (Alaska 1983).[2] It was largely based on the rationale that since the contribution act allowed a partial loss-shifting remedy among joint tortfeasors, any other partial loss-shifting remedy would necessarily conflict with the statutory remedy. This rationale, however,

---

**1.** " "This act would distribute the burden of responsibility equitably among those who are jointly liable and thus avoid the injustice often resulting under the common law.' " House Judiciary Committee Report, 1970 House Journal 437 (quoting the National Conference's prefatory note to the Uniform Contribution Among Tortfeasors Act). "[S]haring equally, furnished a rough approximation of a just result. For example, it was certainly preferable when two joint tort-feasors were liable, for them to share equally in paying the damages, than for one to

go free simply because the plaintiff elected to recover from the other." *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 441 (Alaska 1979) (Boochever, C.J., dissenting).

**2.** *Vertecs* has since been followed in other tort cases. *Koehring Mfg. v. Earthmovers of Fairbanks*, 763 P.2d 499, 503–04 (Alaska 1988); *D.G. Shelter Prods. v. Moduline Indus.*, 684 P.2d 839, 842 (Alaska 1984).

does not apply to partial indemnity claims based on implied contracts since the contribution act has never applied to implied contract cases. The majority opinion's reliance on the *Vertecs* rule is thus difficult to justify. To repeat, the *Vertecs* rule barred partial non-statutory loss shifting in tort cases because there was a partial statutory loss-shifting remedy. There has never been a partial statutory loss-shifting remedy in implied contract cases, and therefore the rationale of the *Vertecs* rule does not apply to such cases.

In summary, where two parties are at fault and are responsible for an indivisible loss, any rule that provides that one of them must bear the entire loss without the opportunity to shift part of the loss to the other is manifestly unjust. What should happen is that the loss should be shared in proportion to the fault of each party. In accord with this, the trial court should be directed on remand to instruct the jury to apportion the damages which the Borough must pay between the Borough and Roen according to the comparative degree of fault of each.