**UNITED STATES of America for the use of POONG LIM/PERT JOINT VENTURE, Plaintiff,**

v.

**DICK PACIFIC/GHEMM JOINT VENTURE; Continental Casualty Co.; National Fire Insurance Co. of Hartford; Seaboard Surety Co.; and St. Paul Fire and Marine Insurance Co., Defendants.**

**No. A03–290 CV (JWS).**

United States District Court, D. Alaska.

Nov. 14, 2005.

### ORDER FROM CHAMBERS

#### [Re: Motion at Docket 156]

SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 156, defendants (collectively "DPG") move to exclude the opinions of Jordan Rosenfeld, an expert designated by plaintiff Poong Lim/Pert Joint Venture ("Poong Lim"). The motion has been fully briefed. DPG has requested oral argument, but it would not assist the court, so DPG's request is denied.[1]

### II. BACKGROUND

Defendant Dick Pacific/Ghemm Joint Venture ("Dick Pacific") was selected as the prime contractor on the Bassett Hospital replacement project, a public works construction project at Fort Wainwright, an Army post near Fairbanks, Alaska. Dick Pacific subcontracted certain work on the project to Poong Lim. Under the subcontract, Dick Pacific agreed to pay Poong Lim $6,519,655 for shop fabrication drawings, structural steel, and erection aids.[2] Defendants Continental Casualty Company, National Fire Insurance Company of Hartford, Seaboard Surety Company, and St. Paul Fire and Marine Insurance Company ("Sureties") are Miller Act sureties on Dick Pacific's payment and performance bonds. Poong Lim's complaint asserts that Dick Pacific breached the subcontract and seeks to recover additional

---

1.  D. Alaska R. 7.2(a)(3)[B].

2.  Doc. 1, ex. 1 at 1–4.

compensation. Dick Pacific denies that additional compensation is owed, alleging that it was Poong Lim which breached the subcontract.

Jordan Rosenfeld is a certified public accountant who is licensed to practice accountancy in four states including Alaska. He received a degree in accounting in 1976 and has been a practicing accountant since that time. He was retained by Poong Lim's counsel to provide expert testimony in this litigation.[3] Rosenfeld prepared an expert report which was provided to counsel for DPG.[4] In the report, Rosenfeld opines that the total additional compensation owed to Poong Lim for its work on the Bassett Hospital project is $1,920,818. DPG asks the court to exclude Rosenfeld's expert testimony on the following grounds

Rosenfeld has (1) employed dubious unsupportable methodology to calculate productivity, (2) has shown erroneous knowledge of contracts and data from which he makes erroneous assumptions on productivity, overhead and profitability (3) utilized fictitious numbers to create fictitious productivity rates, fictitious budgeted hours and fictitious actual hours to create fictitious labor overruns, and (4) applied an impermissible total cost methodology to his analysis.[5]

## III. DISCUSSION

DPG's first contention is that Rosenfeld's method for calculating productivity is faulty. Productivity is defined as "the physical output per unit of productive effort."[6] Rosenfeld's report does not expressly state any particular level of productivity, although one or more rates of productivity (there likely would be differ-ent rates for different crafts or groups of workers) would necessarily be implicit in his calculation of labor costs. Similarly, DPG's briefing does not expressly indicate what level of productivity Rosenfeld has calculated using "dubious unsupportable methodology." Without a more meaningful presentation, the court cannot determine what level of productivity Rosenfeld's report may imply or why that rate or those rates might be dubious and insupportable. On the record before the court, the first ground for excluding Rosenfeld's expert opinion fails.

Next, DPG contends that Rosenfeld has displayed an erroneous understanding of relevant contracts and data and so has derived erroneous assumptions. It is, of course, correct, as illustrated in *Fletcher v. Trademark Const., Inc.,*[7] that when an expert's opinion is based on seriously flawed data, it will not support a decision in favor of the party offering the opinion. Here, after examining the parties' papers, the court concludes that whether Rosenfeld has misapprehended contract terms or data necessary to support his opinions depends on the resolution of disputed facts. The Rosenfeld Affidavit lays out the sources of information upon which he relied in forming his opinions. DPG has not convinced the court that Rosenfeld relied on data of a type which is so clearly outside the scope of those things upon which an accountant would rely as to render Rosenfeld's opinion testimony excludable under Rule 702 jurisprudence. Based on the record before the court, DPG's arguments about the accuracy and quality of the information relied upon by Rosenfeld go to the weight of Rosenfeld's testimony,

3. Affidavit of Jordon Rosenfeld, attached as an unmarked exhibit to Poong Lim's opposition filed at docket 181 ("Rosenfeld Affidavit") at ¶¶ 1–2.

4. Doc. 156, Ex. 1.

5. Doc. 156, DPG's Motion at p. 2.

6. Webster's Third New International Dictionary (Unabridged Ed.1986).

7. 80 P.3d 725 (2003).

not its admissibility. Under such circumstances, it will be for the parties to persuade the fact-finder at trial which of the competing views of Rosenfeld's opinions to accept.[8]

Third, DPG asserts that Rosenfeld has used fictitious numbers and so has derived fictitious conclusions. The Rosenfeld Affidavit lays out what he relied upon. It is possible that some of the data he relied upon was erroneous, but the court finds no basis for DPG's assertion that what Rosenfeld relied upon was fictitious in the sense that he simply made up numbers. DPG has not presented evidence sufficient to support the proposition that there are lacunae in the data upon which Rosenfeld relied and that he filled those gaps with imaginary numbers. If there are holes in the information upon which Rosenfeld relied sufficient to render his opinions unreliable, DPG will need to establish that at trial.

Fourth, DPG asserts that Rosenfeld used an "impermissible" total cost approach to derive his opinions. Under Alaska law, computing contract losses by the total loss method is disfavored,[9] but it is not impermissible as explained by the Alaska Supreme Court:

Courts have generally adopted a four-part test to determine whether a total cost methodology should be allowed to prove a contractor's damages:

The acceptability of the method hinges on proof that (1) the nature of the particular losses makes it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.[10]

To justify exclusion of Rosenfeld's testimony, DPG first quotes from a turgid passage in his deposition which DPG says establishes that Rosenfeld used a total cost method with respect to damages claimed to result from payments to the "labor suppliers" or subcontractors identified in Exhibit 541.[11] DPG next asserts that Poong Lim has not established any of the four criteria necessary to permit it to make use of a total cost methodology.[12]

Poong Lim's responds that Rosenfeld relied on another expert, Schwartz, and then contends that because Rosenfeld himself is "not offering opinion as to causation or entitlement" and "is merely providing pricing to the labor hours and shop drawing hours" his opinions are admissible.[13]

8. If, after all the evidence is heard at trial, it is established that Rosenfeld's opinions actually do depend on substantially flawed data, as was the situation of the expert in *Fletcher*, the court might then enter judgment for DPG.

9. See, e.g., *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 41 (Alaska 1998); *Geolar, Inc. v. Gilbert/Commonwealth, Inc. of Michigan*, 874 P.2d 937, 943 (Alaska 1994); *Fairbanks North Star Borough v. Kandik Const., Inc. & Assoc.*, 795 P.2d 793, 798–99 (Alaska 1990), *opinion vacated in part on rehr'g*, 823 P.2d 632 (relevant part unaffected).

10. *Municipality of Anchorage v. Frank Coluccio Const. Co.*, 826 P.2d 316, 325 (1992)

11. Doc. 156 at p. 7 citing pages 72–74 of Rosenfeld's deposition which is attached as exhibit 2. The court has not found a copy of Exhibit 541 in the materials supplied by the parties in connection with the instant motion, and so draws its understanding of what is in that exhibit from Rosenfeld's testimony about it which is found at pp. 64–66 of the Rosenfeld deposition.

12. *Id.* at p. 13. It may be noted that counsel for DPG only references three of the four requirements as not having been established, thereby seeming to concede at least for purposes of the motion that the other criterion-that Poong Lim's bid estimate was reasonable-is sufficiently established.

13. Doc. 181 at p. 19.

That assertion may go too far, because it assumes that the underlying evidence of causation or entitlement is sound. However, the court does agree that Rosenfeld's own methodology has not been shown by DPG to constitute a total cost approach. An examination of Rosenfeld's report confirms that he did rely on Schwartz's determination that there were "32,244 production and 10,977 detailing compensable overrun hours due to impacts caused by Dick Pacific/Ghemm." [14] Whether or not Schwartz used some variant of a total cost method to determine the number of "overrun" hours is not an issue presently before the court.[15] If, in fact, Rosenfeld's damage calculations do reflect use of a total cost method embedded in Schwartz's work, it is incumbent on DPG to establish that proposition. If DPG does so, then it would fall to DPG to show that the four prerequisites for its use are present.

## IV. CONCLUSION

For the reasons set out above, the motion at docket 156 is **DENIED**. Nothing in this order shall be construed to show that the court has concluded that Schwartz used an acceptable methodology. The court has made no determination on that issue.

---

14. Doc. 156, Exhibit 1, Rosenfeld Report at p. 3.

15. DPG did attack Schwartz's testimony in a motion at docket 155, but the motion attacked his deposition testimony rather than the opinions reflected in an expert report, and it was denied as premature and possibly unnecessary.